UNITED STATES DISTRICT COURT
DISTRICT OF KANSAS

_____

WILLIAM L. WRIGHT,

           Plaintiff,                                  Case No.: 6:15-cv-1268-EFM-KGG

     vs.

ENHANCED RECOVERY COMPANY, LLC,

           Defendant.

_____

## DEFENDANT, ENHANCED RECOVERY COMPANY, LLC'S MOTION FOR SUMMARY JUDGMENT AND INCORPORATED MEMORANDUM OF LAW

**MARTIN, PRINGLE, OLIVER, WALLACE & BAUER, LLP**

Scott B. Haines KS #17509
Matthew P. Clune KS #21064
9401 Indian Creek Pkwy
Building 40, Suite 1150
Overland Park, Kansas 66210
sbhaines@martinpringle.com
mpclune@martinpringle.com
Phone: 913-491-5500
Fax: 913-491-3341

and

**SMITH, GAMBRELL & RUSSELL, LLP**
Scott S. Gallagher
Florida Bar No. 0371970
Smith, Gambrell & Russell, LLP
50 North Laura Street, Suite 2600
Jacksonville, Florida 32202
Telephone: (904) 598-6111
Facsimile:  (904) 598-6211
Email:  sgallagher@sgrlaw.com
*Admitted Pro Hac Vice*
ATTORNEYS FOR DEFENDANT

## STATEMENT OF FACTS

### Introduction and Procedural History

1.      This action stems from telephone calls Enhanced Recovery Company, LLC ("ERC") placed to a telephone number associated with Plaintiff, William Wright ("Plaintiff" or "Wright"), seeking to collect on an account in the name of a third party.

2.      Plaintiff filed this action against ERC in the District Court of Sedgwick County, Kansas on August 13, 2015. In his Petition, Plaintiff alleged three counts against ERC: violation of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq.* ("FDCPA"), violation of the Kansas Consumer Protection Act, K.S.A. § 50-623, *et seq.* ("KCPA"), violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA"). Pl.'s Pet.

3.      ERC removed the action to this Court on September 9, 2015, and filed its answer and affirmative defenses on September 16, 2015. *See* Def.'s Not. of Removal (DE 1); Def.'s Ans. (DE 5).

4.      In its Answer, ERC raised affirmative defenses that Plaintiff is not a "consumer" under the KCPA, that he did not suffer damages as required to seek damages under the KCPA, and that he is not a "consumer" under the FDCPA. Ans. (DE 5).

5.      The parties conducted discovery and attended the pretrial conference on June 8, 2016. Thereafter the Pretrial Order was entered by Magistrate Judge Gale. *See* Pretrial Order (DE 33).

6.      In the Pretrial Order, Plaintiff defines his claims as: Defendant continued to place telephone calls to the subject telephone number after being informed that it was the incorrect number, constituting harassment under the Fair Debt Collection Practices Act (Count 1 of the Complaint) and a deceptive and/or or [sic] unconscionable practice under the Kansas Consumer

Protection Act (Count 2 of the Complaint). Additionally, some of the calls were placed using an auto-dialer and/or artificial or prerecorded voice in violation of the Telephone Consumer Protection Act (Count 3 of the Complaint). *Id.* at § 4.a.

**ERC's Business and Record Keeping**

7.      ERC is engaged in the business of providing collection services on behalf of its customers. Decl. of J. Davis at ¶ 20.[1]

8.      ERC is not a telemarketer and does not engage in telephone solicitation. *Id.*

9.      ERC maintains an account history for every account placed with ERC for collection. The account history is created by ERC's software and reflects all attempts to communicate with consumers, as well as internal actions, updates, and status changes by ERC. *Id.* at ¶ 6.

10.      For any call in which a recipient is connected with a live representative of ERC, a recording is automatically made of the call, which is stored off-site and sent to ERC at the close of business for the day.  ERC maintains all call recordings in archived format for no less than 36 months. *Id.* at ¶ 7.

**ERC's Recorded Collection Activities on the Subject Account**

11.      On November 25, 2013, ERC's customer, AT&T, placed an account with it for collection bearing the name of Stephanie Yokom as the account holder and reflecting a service address located in Florence, Colorado (the "Subject Account"). *Id.* at ¶ 8.

12.      A true and correct copy of ERC's account history for the Subject Account (the "Acct. Hist.") is attached to the Declaration of Jason Davis as Exhibit A. *Id.*

13.      The telephone number 316-680-4969 (the "4969 Number") was included in the placement file for the Subject Account. *Id.*

---

[1] Attached hereto as Exhibit A.

14.     The name Stephanie Elkins is not included in ERC's records. Acct. Hist. at 1.

15.     Beginning on July 23, 2014, ERC began placing calls to the 4969 Number in an attempt to reach the account holder, Stephanie Yokom. Decl. of J. Davis at ¶ 9.

16.     All calls placed to the 4969 Number were placed in an attempt to reach the account holder, Stephanie Yokom, and to collect on the Subject Account from her on behalf of ERC's customer, AT&T. *Id.* at ¶ 10.

17.     Two calls ERC placed to the 4969 Number were connected and a pre-recorded voice message played, which asked the recipient to confirm whether he or she was the sought party and allowed the recipient to interact using the telephone keypad. *Id.* at ¶¶ 12-13.

18.     The first call occurred on July 30, 2014 and the recipient selected the options indicating that he is not the called party and that the called party is not presently available. Acct. Hist. at 1; Pl.'s Depo. at 20:25-21:20.[2]

19.     There is a second option, not selected on that call, which indicates the called number is a wrong number.  Decl. of J. Davis at ¶ 14.

20.     The second call connected on December 10, 2014, and ERC's pre-recorded voice message played without any interaction from the call recipient. *Id.*; Acct. Hist. at 1.

21.     ERC's records reflect that there was never a call to the 4969 Number which connected the call recipient to a live representative. Decl. of J. Davis at ¶¶ 12, 18.

22.     Two additional calls are reflected as having been connected in the call records for the Verizon account under which the 4969 Number received service. Decl. of S. Zeiters, at Exh. A, p. ERC 47;[3] Decl. of J. Davis at ¶ 17.

_____

[2] Cited excerpts from Plaintiff's deposition testimony as attached hereto as Exhibit B.
[3] Attached hereto as Exhibit C.

23.     Verizon's records reflect these calls occurred on August 1, 2014 and December 29, 2014, and both established a connection for one minute or less. Decl. of S. Zeiters, at Exh. A, p. ERC 47, ERC 65 Exh. C, p. 4-5; Decl. of J. Davis at ¶ 17.

24.     ERC's records for these calls reflect no conversation with the called party and no pre-recorded voice message was deployed. Acct. Hist. at 1.

25.     ERC placed a total of twenty-one calls to the 4969 Number, with the first call placed on July 23, 2014 and the last call placed on June 22, 2015. *Id*. at 1-2.

26.     Two separate calling systems were used to make telephone calls to the 4969 Number.  For the calls between July 23, 2014 and December 10, 2014, ERC used a system which allows it to deploy the prerecorded voice message and use its IVR system as described above. Decl. of J. Davis at ¶ 16.

27.     For calls after December 10, 2014, ERC used a system which is not compatible with the use of the prerecorded voice message or the IVR system. *Id.*

28.     Neither of the two systems used have the capacity to generate numbers to be called either randomly or sequentially nor to store any such generated numbers. *Id.*

29.     ERC cannot modify these systems to so generate numbers and both systems require human operation to place calls. *Id.*

30.     At no point did ERC request any payment from the Plaintiff, William Wright, or anyone else reached at the 4969 Number. Decl. of J. Davis at ¶ 11.

31.     At no point did ERC attempt to sell any goods or services to the Plaintiff, William Wright, or any other person reached at the 4969 Number. *Id.* at ¶ 20.

32.     On July 10, 2015, ERC received correspondence from Plaintiff's attorney, informing ERC that calls placed to the 4969 Number were reaching the Plaintiff, William Wright, and not the party sought in those communications, the account holder. *Id.* at ¶ 19.

33.     Immediately upon receipt of the July 10, 2015 correspondence, ERC removed the 4969 Number from the Subject Account, and ceased placing calls to the 4969 Number. *Id.*

**Plaintiff's Call Log**

34.     Plaintiff maintained a call log during the time frame at issue (the "Call Log"), which he incorporated into the Petition in this matter. *See* Pl.'s Pet. at ¶ 19; Pl.'s Depo. at Exh. 1.

35.     Plaintiff admits that all calls he received from ERC were seeking to collect on an obligation owed by a third-party. Pl.'s Resp. to Req. for Admis. No. 8.[4]

36.     The Call Log begins on November 25, 2013. Pl.'s Depo. at Exh. 1.

37.     Plaintiff admits that he now relies on ERC's records as to the timing and number of calls. *Id.* at 20:2-:4.

38.     While Plaintiff originally claimed every call on the Call Log was from ERC, he has now admitted that at least four of the calls originated from other collectors seeking to collect from the third-party account holder, Ms. Yokom, and not from ERC. *See* Pl.'s Depo. at 51:3-54:22, 70:23-71:6.

39.     These calls occurred on December 19, 2013; August 13, 2014; August 26, 2014; and October 2, 2014. *Id.* at 51:3-54:22.

40.     An additional call, occurring on May 14, 2014, was placed by a third party, Credit Bureau of Carbon County, ("Carbon County"). Decl. of D. Russell at ¶ 5.[5]

---

[4] Attached hereto as Exhibit D.
[5] Attached hereto as Exhibit E.

41.     This call resulted in a conversation between Plaintiff and a live representative of Carbon County, in which Plaintiff informed Carbon County that he was not Stephanie Elkins and they were calling a wrong number. *Id.*; Pl.'s Depo. at Exh. 1.

42.     The Call Log also reflects that some of the calls referenced a Stephanie Elkins and contains the notation "Farmers?" next to one call. Pl.'s Depo. at Exh. 1.

43.     Plaintiff has identified only two specific calls during which he claims to have informed ERC's representatives it was calling the wrong number. *See* Pl.'s Depo. at 18:2-:21, Pl.'s Resp. to Interr. No. 3.[6]

44.     First, in Plaintiff's deposition, he identified the call occurring on October 2, 2014 *See* Pl.'s Depo. at 18:2-:21. Plaintiff states that is the only substantive conversation he had with someone from ERC and it was the only time someone at ERC was discourteous on the phone with him, which is why it remains so clear in his memory. *Id.* at 20:17-:21, 38:25-39:3, 50:6-:12.

45.     Plaintiff later admitted this call was not originate from ERC. *Id.* at 39:4-:8, 51:3-:17, 70:23-71:6.

46.     The other call Plaintiff identified is the call of August 20, 2014 at approximately 2:51 p.m. Pl.'s Resp. to Interr. No. 3.

47.     ERC's records show that the phone call was not answered. Decl. of J. Davis at ¶ 12, Acct. Hist. at 1.

48.     Verizon's records reflect that no call connected with the 4969 Number at that time. Decl. of S. Zeiters, at Exh. A, p. ERC 50.

49.     Plaintiff admits that Verizon's records are more accurate than the Call Log. Pl.'s Depo. at 42:7-:10, 55:12-:21.

---

[6] Attached hereto as Exhibit F.

6

50.     Plaintiff admits that he presumed that some of the calls on his Call Log came from ERC as a result of searching the number on Google. *See, e.g., id.* at 19:15-:22, 28:11-:17, 30:14-:18.

51.     Plaintiff also admits that he presumed that all of the calls received during the timeframe at issue originated from ERC because he received other calls from ERC. *Id.* at 47:14-:19.

**This Action**

52.     Plaintiff's claims against ERC are based only on ERC placing calls to the 4969 Number. Pl.'s Depo. at 14:18-:22.

53.     Plaintiff admits that he suffered no actual damages as a result of the calls placed to the 4969 Number. Pl.'s Depo. at 58:13-:15, 63:9-:21, 67:17-:24.

## MEMORANDUM OF LAW

### I.     Introduction

#### A.  Background and Issues

Plaintiff filed this action against ERC seeking statutory damages for alleged violations of the Fair Debt Collection Practices Act (FDCPA), the Kansas Consumer Protection Act (KCPA), and the Telephone Consumer Protection Act (TCPA). He bases these claims on allegations that ERC called his cellular telephone in an attempt to collect a debt from a third-party and, allegedly, continued to call despite notice that it could not reach the third-party at the number called. Nonetheless, Plaintiff has disclaimed suffering any actual loss or damages as a result of this conduct.

ERC's records conclusively establish that its representatives never spoke with Plaintiff and, further, conclusively establish that ERC did not receive notice from Plaintiff that the third-

party could no longer be reached at the number called.  They also establish that ERC's first notice that the third party could no longer be reached at the number was through a letter to ERC from Plaintiff's counsel, after which no further calls were made to Plaintiff's number. In fact, Verizon's records establish that only four calls ever connected between ERC and Plaintiff's telephone number, with only two establishing a connection for over a minute.

Plaintiff readily admits that both ERC's records and Verizon's records are more accurate than his handwritten call log, which he maintained during the timeframe at issue, and states that he is relying on ERC's records in pursuing his claims herein. He also now admits that certain calls appearing on his call log, which he believed and alleged were placed by ERC, originated from other collectors, who were concurrently calling his telephone number, seeking to collect from the same third-party. One of these calls which Plaintiff now acknowledges he mistakenly believed was from ERC, is the call he claims to be his clearest memory of informing ERC that the account holder could not be reached at his number. The other specific call on his log he has identified as having led to a substantive conversation with ERC, did not connect according to both ERC's records, on which Plaintiff admits to rely, and Verizon's records, which he admits are more accurate than his own.

The legal issues before this Court are straightforward and ERC is entitled to entry of summary judgment on each of the three claims Plaintiff has asserted. First, he does not have standing to sue under the KCPA and no conduct here violated that act. Second, while plaintiff has standing to assert some claims under the FDCPA, there is no evidence ERC violated the act. Finally, the evidence establishes that Plaintiff can recover under the TCPA, at most, for only two calls, and ERC seeks an Order limiting his claim thereunder to those two calls.

### B.  Legal Standard

Summary judgment is proper where the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c).  The moving party need not disprove plaintiff's claim; it need only establish that the factual allegations have no legal significance. *Dayton Hudson Corp. v. Macerich Real Estate Co.*, 812 F.2d 1319, 1323 (10th Cir. 1987).  Where the movant does not bear the burden of proof on a claim, summary judgment is appropriate if the movant shows an absence of evidence to support an essential element of the claim.  *Celotex Corp v. Catrett*, 477 US 317, 375 (1986).

In resisting a motion for summary judgment, the opposing party may not rely upon mere allegations or denials contained in its pleadings or briefs. Rather, the nonmoving party must come forward with *specific* facts showing the presence of a genuine issue of material fact for trial and significant probative evidence supporting the allegation. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). Once the moving party has carried its burden under Rule 56(c), the party opposing summary judgment must do more than simply show there is some metaphysical doubt as to the material facts. "In the language of the Rule, the nonmoving party must come forward with `specific facts showing that there is a genuine issue for trial.'" Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (quoting Fed.R.Civ.P. 56(e)). One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses, and the rule should be interpreted in a way that allows it to accomplish this purpose. Celotex, 477 U.S. at 324.

**II.**  **Plaintiff's claims for damages under the Kansas Consumer Protection Act are groundless because he does not have standing to sue under the statute and ERC did not violate the Act.**

Count II of the Petition alleges that ERC violated the Kansas Consumer Protection Act, K.S.A. § 50-623, *et seq*. (the "KCPA"). Plaintiff claims that ERC committed one or more deceptive and/or unconscionable acts in violation of the KCPA and seeks damages in the amount of $20,000 for each call placed to his telephone under sections 50-634, 50-636. These claims are groundless, however, because Plaintiff does not have standing to sue for statutory damages under the KCPA and, furthermore, even if he did, ERC did not violate any provision of the KCPA.

### A. Plaintiff does not have standing to pursue damages because he is not a 'consumer' under the act and he did not suffer any injury.

The KCPA contains two enforcement mechanisms. The first provides that the Kansas attorney general shall enforce the act. The second provides a private right of action for consumers, and it is under this provision that Plaintiff seeks damages against ERC. This provision, however, does not provide a remedy for Plaintiff and, thus, he lacks statutory standing under the KCPA to sue ERC for any alleged violation.

The private right of action provision states, "[a] consumer who is aggrieved by a violation of this act may recover, but not in a class action, damages or a civil penalty as provided in subsection (a) of  K.S.A. 50-636 and amendments thereto, whichever is greater." K.S.A. 50-634 (b) (2015). It further provides:

> the court may award to the prevailing party reasonable attorney fees, including those on appeal, limited to the work reasonably performed if:
> (1)   The consumer complaining of the act or practice that violates this act has brought or maintained an action the consumer knew to be groundless and the prevailing party is the supplier; or a supplier has committed an act or practice that violates this act and the prevailing party is the consumer; and
> (2)   an action under this section has been terminated by a judgment, or settled.

*Id.* at (e).

### 1. Plaintiff is not a consumer and did not engage in a consumer transaction related to ERC's calls.

Plaintiff's claims under the KCPA must be dismissed because he is not a consumer with respect to the debt ERC sought to collect when it placed calls to the 4969 Number. The KCPA defines consumer as "an individual, husband and wife, sole proprietor, or family partnership who seeks or acquires property or services for personal, family, household, business or agricultural purposes." K.S.A. § 50-624 (b) (2015).

To bring an action under the KCPA, the plaintiff must be a "consumer" as defined by the statute and the transaction at issue must be a "consumer transaction." *Lowe v. Surpas Resource Corp.*, 253 F. Supp. 2d 1209, 1235-36 (D. Kan. 2003) (*citing Limestone Farms, Inc. v. Deere & Co.*, 29 P.3d 457, 461 (2001)). In *Lowe*, a plaintiff brought claims based, *inter alia*, on misrepresentations made by a supplier to its third-party collectors when it assigned or sold debt to the collectors. *Id.* at 1234-35. The district court held that such a claim could not be brought under the KCPA because the statements were not made to a consumer in connection with a consumer transaction. Rather, the statements were made between businesses in a strictly commercial transaction. *Id.* at 1236. The mere fact that the statements had an effect on the plaintiff did not render her a consumer as defined by the statute. *Id.*

Likewise in *Limestone Farms*, the Court of Appeals of Kansas found the plaintiff therein could not maintain an action under the KCPA against the defendant suppliers because he was not a consumer with respect to the transaction at issue. *Limestone Farms, Inc. v. Deere & Co.*, 29 P.3d 457, 461 (Kan. Ct. App. 2001). It was undisputed that the plaintiff never received a legal interest in the crop planter, which was the subject of the suit, and the trial court entered summary judgment against him on the dual bases that he was not a consumer and he did not suffer damages. The Court of Appeals held that, based on his removal from the transaction at issue, the plaintiff was not a consumer and affirmed summary judgment against him. *Id.*

11

Here, ERC placed calls to the 4969 Number in an attempt to reach a third party, Ms. Yokom, to collect on an account placed with it for collection in Ms. Yokom's name. Plaintiff admits that all of the calls he received from ERC were seeking to collect on an obligation owed by a third-party. Pl.'s Resp. to Req. for Admis. No. 8. Further, Plaintiff admits he was not responsible for the debt which was the subject of the telephone calls placed to the 4969 Number and ERC never alleged he was responsible for that debt. Pl.'s Depo. at 66:5-:16. Plaintiff fully acknowledges he did not purchase any goods or services from ERC and ERC did not provide him with any goods or services. *Id.* at 66:17-:23. In short, Plaintiff is not a consumer under the KCPA.

Furthermore, like the transactions at issue in *Lowe* and *Limestone Farms*, the debt on which ERC sought to collect was not a "consumer transaction" under the act. The KCPA defines consumer transaction to mean: "a sale, lease, assignment or other disposition for value of property or services *within this state* (except insurance contracts regulated under state law) to a consumer; or a solicitation by a supplier with respect to any of these dispositions." K.S.A. § 50-624 (e) (2015) (emphasis supplied). When AT&T placed the subject debt with ERC for collection it provided the service address for the account holder, Ms. Yokom. This address is located in Florence, Colorado. As the service at issue was provided to Ms. Yokom outside the state of Kansas, it is not a consumer transaction subject to the act.[7]

Additionally, the fact that debt at issue did not arise from a consumer transaction prevents the calls at issue from being subject to the KCPA. *See State ex rel. Miller v. Midwest Serv. Bur. of Topeka*, 623 P.2d 1343, 1349 (Kan. 1981). In *Miller*, the Kansas Supreme Court held that

---

[7] Additionally, as it is a required element for the KCPA to apply, Plaintiff bears the burden to prove the debt at issue arose from a consumer transaction, of which there is not evidence.

there were conditions precedent before a third-party collector could be subject to the provisions of the KCPA:

> (1) The debt sought to be enforced came into being as a result of a consumer transaction;
> (2) The parties to the original consumer transaction were a "supplier" and a "consumer" as defined in the act; and
> (3) The conduct complained of, either deceptive or unconscionable, occurred during the collection of, or an attempt to collect, a debt which arose from the consumer transaction and was owed by the consumer to the original supplier.

*Id.* As the transaction at issue was not a consumer transaction, because it occurred outside of the state of Kansas, and Plaintiff was not the consumer with respect to the transaction in the first instance, both conditions one and three fail.

Accordingly, Plaintiff cannot maintain suit against ERC under the KCPA.

### 2. Plaintiff has not suffered damages as required by the KCPA.

In order to bring a claim for damages under the KCPA, the complainant must both be a consumer, which Plaintiff is not, and have suffered actual damages as a result of the actions of which he complains. Plaintiff admits that he has suffered no such damages.

A private plaintiff under section 50-634 must have actual damages in order to pursue a claim for statutory damages. *Finstad v. Washburn*, 845 P.2d 685 (Kan. 1993). In *Finstad*, several consumers brought an action under the KCPA based on misrepresentations as to the accreditation status of a court reporting program. *Id.* at 686. The trial court granted summary judgment in favor of the supplier because the KCPA's private right of action for damages requires that the plaintiff be a consumer "aggrieved *by a violation of this act.*" *Id.* at 688 (emphasis in original). The Kansas Supreme Court, in an issue of first impression, held that "aggrieved" as used in the act meant "having suffered a loss or injury." *Id.* at 691. The Court summed up the dichotomy of the act's enforcement mechanisms by stating, "A loss or injury resulting from a violation of the

Act is not required in an action filed by the attorney general under K.S.A. 50–632 and K.S.A. 50–636; it is, however, required for one filed by a consumer under K.S.A. 50–634(b)." *Id.*

Here, Plaintiff has not suffered any loss or injury and, thus, he has not been aggrieved by any alleged violation of the KCPA. Plaintiff has admitted that he suffered no actual damages as a result of the claimed violations of the KCPA. *See* Pl.'s Depo. at 58:13-:15, 63:9-:21, 67:17-:24. Plaintiff's position regarding his damages is encapsulated in the following exchange at his deposition:

> Q: And is it accurate to say that the damages that you are seeking are just the statutorily authorized damages under the act?
> A: Yes, that is accurate.
> Q: And do you, in fact, have any losses or damages other than what you claim to be entitled to under the statute?
> A: No, I have no other losses that I know of.

Pl.'s Depo. at 67:17-:24. This lack of damages prevents Plaintiff from maintaining suit for damages under the KCPA. And his failure to qualify as a consumer under the act prevents Plaintiff from maintaining suit for any remedy provided by the KCPA.

The foregoing facts are undisputed and material. Plaintiff is not a consumer under the KCPA and ERC did not seek to collect on a consumer transaction from him. Accordingly, ERC is entitled to entry of summary judgment for his claims under the act because he does not have statutory standing to pursue them.

### B. Even if Plaintiff had standing under the KCPA, which he does not, ERC did not violate any provision of the Act and would still be entitled to summary judgment on his claims.

The KCPA is not a statute specifically aimed towards regulating debt collection activity. Its four purposes, as stated in the act are: "To simplify, clarify and modernize the law governing consumer transactions; to protect consumers from suppliers who commit deceptive and unconscionable practices; to protect consumers from unbargained for warranty disclaimers; and

to provide consumers with a three-day cancellation period for door-to-door sales." K.S.A. § 50-623. ERC acknowledges that the act prohibits collectors from using deceptive or unconscionable practices in enforcing consumer obligations in certain circumstances. But, there is no provision in the act which prohibits the conduct alleged in this action.

As an initial matter, the fact the transaction at issue is not a "consumer" transaction not only negates Plaintiff's standing under the KCPA for any allegedly false or unconscionable act, but negates *any* person's standing for such a claim for relief. The act's prohibitions on such conduct are contained in sections 50-626 and 50-627. Both sections render certain conduct "in connection with a consumer transaction" to be prohibited. K.S.A. § 50-626, 50-627 (2015). As the transaction for which ERC sought to collect occurred in the state of Colorado, it was not a consumer transaction under the act as it did not occur "within this state[,]" as required by the term's definition.

Furthermore, even if the act did apply to the transaction at issue, which it does not, ERC's alleged conduct does not fall within the scope of conduct prohibited by the act. The act prohibits broadly the use of deceptive acts or practices in connection with consumer transactions and defines specific conduct which is defined to violate the general prohibition. K.S.A. § 50-626 (2015). To prevail under section 50-626, a plaintiff must show that the defendant acted with a level of knowing intent. *See Goshon v. IC Sys., Inc.*, No. 14-2572-CM, 2016 WL 1069048, at * 3 (D. Kan. Mar. 17, 2016) (*citing Porras v. Bell*, 857 P.2d 676, 678 (Kan. Ct. App. 1993). The court is free to grant summary judgment on a claim under the section where there is no record of deceptive conduct. *Id.* (*citing Gonzales v. Assocs. Fin. Serv. of Kan.*, 967 P.2d 312, 328 (Kan. 1998)).

The statute specifically prohibits acts which generally occur in attempting to sell goods or services to a consumer. *See id.* These prohibitions simply do not fit the mold of the allegations by Plaintiff here. To illustrate this point, arguably the prohibition most applicable to the facts here is subsection (b)(8), which prohibits, "falsely stating, knowingly or with reason to know, that a consumer transaction involves consumer rights, remedies or obligations[.]" K.S.A. § 50-626 (b)(8) (2015). But it is undisputed ERC did not violate this provision, as Plaintiff admits ERC never alleged or claimed that he was financially obligated on the account on which it was seeking to collect. Pl.'s Depo. at 66:5-:16.

Likewise, the act prohibits broadly the use of unconscionable acts or practices in connection with consumer transactions and defines specific conduct which is defined to violate this prohibition. K.S.A. § 50-627 (2015). **Whether an act violates section 50-627 is a question of law for the court to decide.** *Id.* at (b) (Emphasis supplied). *See also Udell v. Kan. Counselors, Inc.*, 313 F. Supp. 2d 1135, 1145 (D. Kan. 2004). All of the enumerated acts in the statute involve taking advantage of a consumer through, for example, an imbalance in the information available to the parties or the willingness of a consumer to enter into a transaction from which the consumer will not receive a benefit. *See* K.S.A. 50-627 (b)(1)-(7) (2015). ERC's actions in placing calls to the 4969 Number attempting to make contact with a third party simply do not fairly fall within the scope of conduct prohibited by the act. Accordingly, they do not violate section 50-627.

To the extent Plaintiff argues his claim under the KCPA can be based on a violation of the Kansas No-Call Act, K.S.A. § 50-670, he is mistaken because those provisions do not regulate the calls at issue. The statute states:

> The No-Call Act regulates calls placed: "for the purpose of soliciting a sale of any property or services to the person called, or for the purpose of soliciting an

extension of credit for property or services to the person called, or for the purpose of obtaining information that will or may be used for the direct solicitation of a sale of property or services to the person called or an extension of credit for such purposes.

Kan. Stat. Ann. § 50-670 (1) (2015).

No KCPA violation can be based on a violation of the No-Call Act because it is undisputed each of Defendant's calls to the 4969 Number was placed in an attempt to collect an overdue financial obligation from a third-party and not in an attempt to solicit the sale of goods or services. See Pl.'s Depo. at 15:25-16:9 ("The calls from ERC began in approximately 2013 and they were all for a person named Stephanie Yokom."). Accordingly, the No-Call Act is inapplicable to the calls and no KCPA claim can be based on it here.

Plaintiff's claims under the KCPA are not properly before this court, as the act does not provide Mr. Wright with a private right of action. He is not a consumer, as defined by the act, and he has not suffered any injuries by reason of the alleged violations of the act. Furthermore, even if Plaintiff had standing to seek damages, or any other relief, under the act, ERC did not violate the act, because the undisputed facts show that the calls were not placed in connection with a consumer transaction and because the act of seeking a third-party account holder is not deceptive or unconscionable. ERC is entitled to summary judgment on Plaintiff's KCPA claims.

**III.    ERC is entitled to summary judgment on Plaintiff's FDCPA claims because they are not supported by any evidence and ERC's actions were not abusive or harassing as a matter of law.**

> **A. There is no evidence of specific facts by which Plaintiff can establish a genuine issue as to whether he informed ERC to stop calling the 4969 Number.**

As discussed in Part I.B above, the non-movant cannot establish a *genuine* issue of fact without citing to *specific* facts, neither speculative nor conclusory, which contradict the other evidence in the case. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 250. Where a party can

present evidence which "is merely colorable" or "is not significantly probative," there is no issue of fact and the court may enter summary judgment. *Id.* at 249-50 (*citing Dombrowski v. Eastland*, 387 U.S. 82 (1967); *First Nat. Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253 (1968)). *See also Stanley v. Sure Check Brokerage, Inc.*, No. 14-2510-EFM, 2015 WL 5781987, at *3 (D. Kan. Oct. 1, 2015) (noting that if the plaintiff's unsworn testimony was considered it would not raise an issue of fact because it was "vague and conclusory").

Plaintiff incorporated the contents of a call log, which he claims to have kept contemporaneously with receiving calls on the 4969 Number, into the allegations of the Petition. *See* Pet. at ¶ 19; Pl.'s Depo. at Exh. 1, Exh. 2. While Plaintiff originally claimed every call on the log was from ERC, he has now admitted that *at least* four of the calls originated from other collectors seeking to collect from the third-party account holder, Ms. Yokom, and not from ERC. *See id.* at 51:3-54:22, 70:23-71:6. These calls occurred on December 19, 2013; August 13, 2014; August 26, 2014; and October 2, 2014. *Id.* at 51:3-54:22. The log also reflects that some of the calls referenced a Stephanie Elkins and contains the notation "Farmers?" next to one call. *Id.* at Exh. 1.

Plaintiff admits that he presumed that some of these calls came from ERC as a result of searching the number on Google. *See, e.g., id.* at 19:15-:22, 28:11-:17, 30:14-:18. After admitting that multiple calls appearing on his purported log of ERC calls originated from other callers, Plaintiff also admitted that he presumed that all of the calls received during the timeframe at issue originated from ERC because he received other calls from ERC. *Id.* at 47:14-:19.

Since receiving ERC's document production in this matter, Plaintiff has admitted he is now relying on ERC's records as to the accurate timing and number of calls. Pl.'s Depo. at 20:2-:4. In doing so, Plaintiff has effectively abandoned his reliance on his own records and now

18

premises his claim on the records of ERC. ERC's call records, which are automatically generated during the call by ERC's computer system, reflect only two calls were answered by a recipient at the 4969 Number, occurring on July 30, 2014 and December 10, 2014. Decl. of J. Davis at ¶ 12; Acct. Hist. at 1. On both calls, ERC deployed a pre-recorded voice message which sought to confirm the identity of the recipient as the account holder before connecting to a live representative. J. Davis at ¶ 12-14; Acct. Hist. at 1. Neither of these calls resulted in a representative speaking to the recipient. J. Davis at ¶ 18; Acct. Hist. at 1.

Verizon's records of the calling activity on the 4969 Number, which Plaintiff admits are more accurate than his log,[8] reflect only two additional calls connected between ERC and the 4969 Number. Decl. of S. Zeiters at Exh. A, p. ERC 47, ERC 65, ERC 66. The two additional calls occurred on July 30, 2014 and December 29, 2014. *Id.* ERC's records do not reflect deploying any message or speaking with any person at the 4969 Number on those occasions. Decl. of J. Davis at ¶ 12, 17; Acct. Hist. at 1.

While Plaintiff claims to remember speaking with live ERC representatives and informing them that Ms. Yokom could not be reached at the 4969 Number, through his own testimony, he has admitted that he was mistaken as to the specific facts on which that general assertion was premised, and has repeatedly admitted that the records of ERC and Verizon, which absolutely refute that assertion, is the evidence the court should rely on, rather than his call log or memory. Plaintiff has identified two specific calls during which he claims to have informed ERC's representatives it was calling the wrong number. First, in Plaintiff's deposition, he identified the call occurring on October 2, 2014 *See* Pl.'s Depo. at 18:2-:21. Plaintiff states this specific call represents the only substantive conversation he had with someone from ERC and was the only time someone at ERC was discourteous on the phone with him, which is why it

---

[8] Pl.'s Depo. at 42:7-:10, 55:12-:21.

remains so clear in his memory. *Id.* at 20:17-:21, 38:25-39:3, 50:6-:12. Despite this clear memory, Plaintiff now fully admits this call did not originate from ERC. *Id.* at 39:4-:8, 51:3-:17, 70:23-71:6.

The only other call Plaintiff identified as an occasion on which he notified ERC of the wrong number is the call of August 20, 2014 at approximately 2:51 p.m. Pl.'s Resp. to Interr. No. 3. Both ERC's records and Verizon's records, both of which Plaintiff admits are more accurate than his log or memory, reflect no such conversation occurred. ERC's records show that the phone call was not answered. Decl. of J. Davis at ¶ 12, Acct. Hist. at 1. And Verizon's records corroborate this by reflecting that no call connected with the 4969 Number at that time. Decl. of S. Zeiters, at Exh. A, p. ERC 50.

Because Plaintiff now admits that the specific facts on which his vague and contradictory assertion is based are untrue, his unsupported, general assertion is insufficient to raise a *genuine* issue as to whether he ever informed ERC that it could not reach Ms. Yokom at the 4969 Number. Accordingly, there are no issues of material fact and, as discussed below, ERC is entitled to judgment on Plaintiff's FDCPA claims as a matter of law.

**B. ERC did not violate the FDCPA in placing telephone calls to the 4969 Number.**

The Tenth Circuit Court of Appeals has recognized that the substantive heart of the FDCPA lies in three broad prohibitions, those in sections 1692d, prohibiting harassment and abusive conduct, 1692e, preventing false and deceptive conduct, and 1692f, preventing unfair and unconscionable conduct. *Johnson v. Riddle*, 305 F.3d 1107, 1117 (10th Cir. 2002). Plaintiff's claim under the FDCPA, as defined by the Pretrial Order, is that ERC harassed him in violation of the FDCPA. *See* Pretrial Order (DE 33) at § 4.a. *See also Cokeley v. Midland Credit Mgmt.*,

No. 13-2518JWL, 2014 WL 5341919, at *4 (D. Kan. Oct. 21, 2014) (relying on pretrial order to define claims asserted under FDCPA).

The FDCPA prohibits debt collectors from "engag[ing] in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt." 15 U.S.C.A. § 1692d (2015). The section also prohibits, "[c]ausing a telephone to ring or engaging any person in telephone conversation repeatedly or continuously with intent to annoy, abuse, or harass any person at the called number." *Id.* at (5).

Plaintiff's claim under the FDCPA is based on the allegation that ERC continued to place calls to the 4969 Number attempting to reach Ms. Yokom after Plaintiff informed ERC's representatives that it was the wrong number for the person sought. He admits his claims are not based on any other conduct. Pl.'s Depo. at 14:18-:22. As the alleged conduct falls squarely within the prohibition of subsection 1692d(5), Plaintiff must establish that ERC had the "intent to annoy, abuse, or harass him" in order to succeed on this claim. *See Cokeley*, 2014 WL 5341919, at *4 n.2. (holding that where a plaintiff "relies solely on telephone calls for the harassing conduct" the claim alleged falls under subsection 1692d(5), which requires an intent element).

Plaintiff never actually informed ERC that it was placing calls to the wrong number. ERC's call records, on which Plaintiff states he relies,[9] show only two connected calls. The first occurred on July 30, 2014. *See* Decl. of J. Davis at ¶ 12; Acct. History at 1. ERC's records reflect that the person answering the phone interacted with ERC's automated IVR system and selected the option that the sought party was not currently available. Acct. History at 1. Plaintiff confirms that he would not have selected any other option on the system. *See* Pl.'s Depo. at 20:25-21:20. This option, however, is different from the option stating that the sought party cannot be reached

---

[9] *See* Pl.'s Depo. at 20:2-:4, 44:12-:17.

at the number dialed, which is the next option, chronologically, on ERC's recording. Decl. of J. Davis at ¶ 14. Accordingly, the option Plaintiff selected did not provide notice to ERC that it was dialing the wrong number, only that the sought party, Ms. Yokom, was not currently available to come to the phone.

The second connected call occurred on December 10, 2014. *See id.* at ¶ 12; Acct. History at 1. ERC's records reflect that this call connected and it played a pre-recorded voice message. Decl. of J. Davis at ¶12; Acct. History at 1. Plaintiff's call log confirms this, as it states: Stephanie Yokom recorded auto message. Pl.'s Depo. at Exh. 1.

Verizon's call records, which Plaintiff also agrees are more accurate than his notes,[10] show two additional connected calls. These calls occurred on August 1, 2014 and December 29, 2014 and each lasted one minute or less. Decl. of J. Davis at ¶ 17; Decl. of S. Zeiters at Exh. A, p. ERC 47, ERC 66, Exh. C, p. 4-5. ERC's records reflect that it reached an answering machine, or voicemail prompt, and did not leave a message on August 1, and that it did not register the December 29 call as having been answered.  Acct. History at 1.

The foregoing pattern and volume of calls to Plaintiff is insufficient, as a matter of law, to constitute abusive or harassing conduct under the FDCPA. *See Udell*, 313 F. Supp. 2d at 1143-44; *Carman v. CBE Grp., Inc.*, 782 F. Supp. 2d 1223, 1229-30 (D. Kan. 2011). In *Udell*, the court granted summary judgment for a collector on a section 1692d claim where the evidence showed that it called the consumer four times over seven days. 313 F. Supp. 2d at 1143-44. The court found, "[t]here is nothing harassing, oppressive, or abusive about this conduct." *Id.* at 1144. Likewise, in *Carman*, the court found that 149 calls over a 2 month period were not harassing or abusive as a matter of law. 782 F. Supp. 2d at 1229-32. The court entered summary judgment for the collector on the claim. *Id.* at 1232.

---

[10] Pl.'s Depo. at 42:7-:10, 55:12-:21.

Regardless of which records are considered, ERC's pattern and volume of calls are insufficient, as a matter of law, to violate section 1692d. ERC's records reflect that it placed twenty-one calls to the 4969 Number, with the first occurring on July 21, 2014 and the last on June 22, 2015. Acct. Hist. at 1-2. This equates to less than two calls per month. Plaintiff claims that ERC made 21 calls to him, with the first occurring on November 25, 2013 and the last on June 22, 2015, a period of 19 months. This equates to approximately one call per month. Whether twenty-one calls were attempted over eleven or nineteen months, this falls well below the frequency with which calls were placed in *Udell* and *Carman*, which equated to four per week and seventy-five per month, respectively.

Furthermore, no calls were placed to the 4969 Number repeatedly or continuously. *See Cokeley*, 2014 WL 5341919, at *5 (*citing* 15 U.S.C. § 1692d (5)). In *Cokeley*, the district court looked to the definitions of the terms "repeatedly" and "continuously" contained in a FTC interpretation letter, to determine if the calls at issue could violate the prohibition of section 1692d (5). It found " 'repeatedly' to mean 'calling with excessive frequency under the circumstances,' and 'continuously' to mean 'making a series of telephone calls right after the other' " and that the calls at issue did not meet either description. *Id.*

As discussed above, ERC placed on average between one and two phone calls per month to the 4969 Number attempting to establish contact with the account holder, Ms. Yokom. ERC never called the 4969 Number more than once a day. Accordingly, ERC did not cause the telephone to ring repeatedly or continuously and this pattern and volume of calls is insufficient to be actionable under section 1692d, and ERC is entitled to judgment, as a matter of law.

Additionally, Plaintiff claimed that on one occasion a caller purporting to be from ERC was rude or abusive to him. *See* Pl.'s Depo. at 18:2-:21. Plaintiff states that is the only substantive

conversation that he had with someone from ERC and it was the only time someone at ERC was discourteous on the phone with him, which is why it remains so clear in his memory. *Id.* at 20:17-:21, 38:25-39:3, 50:6-:12. Despite this clear memory, however, Plaintiff later admitted that this call did not originate from ERC, but rather a different collector seeking to collect from Ms. Yokom, and he was mistaken as to the source of the call. *Id.* at 39:4-:8, 51:3-:17, 70:23-71:6.

To the extent Plaintiff might allege violations of the FDCPA under different sections, there is no conduct to support any such violation. As discussed above, the pretrial order specifies that Plaintiff's claim arises under section 1692d, and the conduct alleged, placing allegedly harassing telephone calls to him, falls squarely within its enumerated provisions. Plaintiff does not claim ERC committed any conduct which falls with the prohibitions of sections 1692e or 1692f.

Furthermore, any claim brought under section 1692c is not properly before this Court. The Petition states that Plaintiff, at least initially, brought a claim under section 1692c of the FDCPA as well. Section 1692c does not provide any protection for Plaintiff, however, as he is not a consumer as defined by the FDCPA. The cited subsection, section 1692c (c), states in relevant part, "[i]f a consumer notifies a debt collector in writing that the consumer refuses to pay a debt or that the consumer wishes the debt collector to cease further communication with the consumer, the debt collector shall not communicate further with the consumer with respect to such debt[.]" 15 U.S.C.A. § 1692c (c) (2015). Consumer is defined by the FDCPA as "any natural person obligated or allegedly obligated to pay any debt."[11] 15 U.S.C.A. § 1692a (3) (2015).

A person who is called by mistake and is not alleged to owe a debt is not a consumer as defined by the act and does not have standing to maintain suit under section 1692c. *See Morris v.*

---

[11] For the purpose of section 1692c, it also "includes the consumer's spouse, parent (if the consumer is a minor), guardian, executor, or administrator." 15 U.S.C.A. § 1692c (d) (2015).

*Portfolio Recovery Assocs., LLC*, No. 2:14-cv-02612, 2015 WL 4523855, at *2 (D. Kan. July 27, 2015). In *Morris*, the defendant collector moved to dismiss a claim brought by a non-debtor under section 1692d, arguing that the proper claim was one arising under section 1692c. *Id.* The district court held that the proper claim was one under section 1692d, noting that section 1692c does not provide any protection for persons not alleged to owe the subject debt. *Id.* (*citing Montgomery v. Huntington Bank*, 346 F.3d 696-97 (6th Cir. 2003)).

There is no dispute here that ERC placed calls to the 4969 Number in an attempt to reach a third-party account holder and not Plaintiff. Plaintiff admits that all calls were seeking the third-party and that ERC never alleged he was obligated or financially responsible for the subject account. Accordingly, Plaintiff is not a consumer under the FDCPA and cannot maintain suit under section 1692c.[12]

Plaintiff's claims that ERC harassed him under section 1692d of the FDCPA are unfounded as there is no evidence that ERC ever called him with knowledge that the party with which it was attempting to establish contact, the third-party account holder, could not be reached at the 4969 Number. Additionally, any claims alleged under other sections of the FDCPA have been abandoned and are not supported by the facts here. Consequently, ERC is entitled to entry of summary judgment in its favor.

**IV.    Plaintiff cannot pursue any claims under the Telephone Consumer Protection Act for unanswered calls that he presumes would have used an artificial or pre-recorded voice message.**

Finally, Count III of Plaintiff's Petition alleges claims under the Telephone Consumer Protection Act, 47 U.S.C.A. § 227 (the "TCPA"). While it is unclear how many violations of the TCPA Plaintiff is seeking in this matter, no violation of the TCPA can be found for the bulk of

---

[12] Additionally, it is undisputed that ERC ceased making telephone calls to the 4969 Number after receiving written notice. Decl. of J. Davis at ¶ 19

the twenty-one calls Plaintiff claims to have received from ERC because ERC did not use an automated telephone dialing system to place calls to the 4969 Number and it only used a pre-recorded voice message on two occasions.

The TCPA prohibits using certain regulated equipment to place telephone calls to a cellular telephone without the consent of the called party. It states:

> It shall be unlawful for any person within the United States, or any person outside the United States if the recipient is within the United States— to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice—
> * * *
> (iii)   to any telephone number assigned to a paging service, cellular telephone service[.]

47 U.S.C.A. § 227 (b)(1)(A)(iii) (2015). The act defines an automatic telephone dialing system as "equipment which has the capacity— to store or produce telephone numbers to be called, using a random or sequential number generator; and to dial such numbers." *Id.* at (a)(1).

To qualify as an automatic telephone dialing system, or autodialer, equipment "must be able to store or produce numbers that *themselves* are randomly or sequentially generated[.]" *Dominguez v. Yahoo, Inc.*, 629 Fed. Appx. 369, 372 (3d Cir. 2015). Equipment that is able to produce such numbers is an autodialer, even if it is not presently used in that capacity. *Id.*

In addition to having a claim for which relief can be granted, whether statutory or otherwise, a plaintiff must have suffered an injury-in-fact to have standing to bring a claim in federal court. *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016). To qualify as a sufficient injury-in-fact, the claimed injury must be both particularized and concrete. *Id.* at 1548. A concrete injury is one that causes *de facto* harm to the plaintiff, or which has the potential to cause real harm. *Id.* at 1549.

Plaintiff can only seek damages under the TCPA for the use of a pre-recorded or artificial voice message because it is undisputed ERC did not use an automatic telephone dialing system

to place any calls to the 4969 Number. ERC used two different telephone systems to place calls to the 4969 Number. The first one it used allows it to deploy a pre-recorded voice message when the called party answers the phone. Decl. of J. Davis at ¶ 16. This system also allows the called party to interact with it by entering numbers on the telephone keypad. *Id.* The second system is incompatible with the use of a pre-recorded voice message or called party interaction through the use of a keypad. *Id.*

Neither of the two phone systems used to place calls to the 4969 Number are an automatic telephone dialing system as defined by the statute. Neither of the systems has the capacity, or ability, to randomly or sequentially generate telephone numbers. *Id.* at ¶ 16. Furthermore, ERC cannot modify the phone systems to have such an ability. *Id.* And the phone systems do not meet the second prong of the definition, as they cannot call any telephone numbers without human operation or intervention. *Id.*

There is no evidence to support more than two violations, at most, against ERC based on calls to the 4969 Number. The evidence shows ERC called the 4969 Number and twice deployed a pre-recorded voice message in conjunction with its interactive phone system, which asked Plaintiff to select an option on his keypad before he would be connected with a live representative. These calls occurred on July 30, 2014 and December 10, 2014. Decl. of J. Davis at ¶ 12; Acct History at 1.  Only two additional connected calls are reflected on the Verizon calling records, and ERC's records establish that no pre-recorded voice message was deployed on these occasions. Decl. of J. Davis at ¶ 12, 17; Acct History at 1.

ERC did not deploy a pre-recorded or artificial voice message on any other call to the 4969 Number. Plaintiff's phone log reflects only a single instance in which he recorded an automated

message from ERC, December 10, 2014. *See* Pl.'s Depo. at Exh. 1. This corresponds with ERC's records as discussed above.

Plaintiff cannot maintain suit under the TCPA for an unanswered call to his cellular telephone on which ERC might have deployed an artificial voice, if he had answered. Even assuming, *arguendo*, that Plaintiff has constitutional standing to pursue a claim for violation of the TCPA without suffering any damages, which he has disclaimed as discussed in Part II.a.2 above, there is no violation of the statute unless ERC actually makes a call and *uses* the pre-recorded voice. Plaintiff cannot base a violation of the TCPA on what he presumes ERC would have done had he answered the call as there is no support for that under the statutory text and, even if there were, such a standard would fall below that required by the Supreme Court in *Spokeo*.

There are no disputes of fact regarding all but two of the calls placed to Plaintiff, they were not placed using an automatic telephone dialing system, and ERC did not deploy an artificial or pre-recorded voice message. Accordingly, ERC is entitled to partial summary judgment on Plaintiff's TCPA claim limiting him to a possible two violations of the act.

**V.     Conclusion**

Plaintiff alleges in the Petition that he informed ERC's representatives that he was not the party with whom ERC wished to speak. The evidence in this matter, however, does not support those allegations. Plaintiff fully admits his handwritten call log is not as accurate as ERC's records or Verizon's records reflecting calls to the 4969 Number during the time period.

Furthermore, he has only specified two calls during which he remembers speaking with an ERC representative. The first was not answered, as reflected by both ERC's records and Verizon's records. The second, Plaintiff's clearest memory of speaking with an ERC

representative, Plaintiff now admits was a call from a different collector seeking the same third-party.

The remaining facts establish ERC placed a total of twenty-one telephone calls to the 4969 Number, over the course of eleven months, in an attempt to reach the third-party account holder, Ms. Yokom. Four of these calls, at most, connected with Plaintiff's cellular telephone and none resulted in anyone at the 4969 Number speaking with a representative of ERC. When ERC received notice that Ms. Yokom could not be reached at the 4969 Number, through Plaintiff's counsel's letter dated July 8, 2015, it removed the number from the account and made no further calls to the number.

All of ERC's actions were consistent with its obligations under the KCPA and FDCPA and it is entitled to entry of summary judgment on those claims. Additionally, evidence establishes for all but two calls to the 4969 Number that ERC did not violate the TCPA, and ERC is entitled to partial summary judgment on Plaintiff's TCPA claims, limiting him to a maximum of two violations.

**MARTIN, PRINGLE, OLIVER, WALLACE & BAUER, LLP**

*/s/ Matthew P. Clune*
Scott B. Haines KS #17509
Matthew P. Clune KS #21064
9401 Indian Creek Pkwy
Building 40, Suite 1150
Overland Park, Kansas 66210
sbhaines@martinpringle.com
mpclune@martinpringle.com
Phone: 913-491-5500
Fax: 913-491-3341

And

**SMITH, GAMBRELL & RUSSELL, LLP**

Scott S. Gallagher
Florida Bar No. 0371970
Smith, Gambrell & Russell, LLP
50 North Laura Street, Suite 2600
Jacksonville, Florida 32202
Telephone: (904) 598-6111
Facsimile:  (904) 598-6211
Email:  sgallagher@sgrlaw.com
*Admitted Pro Hac Vice*

ATTORNEYS FOR DEFENDANT

## CERTIFICATE OF SERVICE

I hereby certify that on July 1, 2016, I electronically filed the foregoing with the

Clerk of the Court by using the CM/ECF system, which will send a notice of electronic

filing to:

A. Scott Waddell
Waddell Law Firm, LLC
2029 Wyandotte Street
Suite 100
Kansas City, MO 64108
scott@aswlawfirm.com
*Attorney for Plaintiff*

*/s/ Matthew P. Clune*
Attorney