UNITED STATES DISTRICT COURT
DISTRICT OF KANSAS

_____

WILLIAM L. WRIGHT,

              Plaintiff,                         Case No.: 6:15-cv-1268-EFM-KGG

     vs.

ENHANCED RECOVERY COMPANY, LLC,

              Defendant.

_____

## DEFENDANT, ENHANCED RECOVERY COMPANY, LLC'S REPLY BRIEF IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

Defendant, Enhanced Recovery Company, LLC ("ERC") by and through its undersigned counsel, hereby files its Reply Brief in Support of its Motion for Summary Judgment.

## RESPONSE TO STATEMENT OF ADDITIONAL FACTS

54.    Admitted/Uncontroverted.

55.    Admitted/Uncontroverted.

56.    Admitted/Uncontroverted.

57.    Admitted/Uncontroverted.

58.    Admitted/Uncontroverted.

59.    Admitted/Uncontroverted.

60.    Admitted/Uncontroverted.

61.    Admitted/Uncontroverted.

62.    Denied as contradicted by Plaintiff's admissions and testimony and unsupported by specific facts. Plaintiff testifies that certain calls were dead air, that he did not answer

some calls, and that he met with recordings in other calls.  Plaintiff stated he only had one substantive phone conversation with ERC, which occurred on October 2, 2014 – but he later admitted that even this phone call did not actually come from ERC – it came from a different collector. Pl.'s Resp. at 8, ¶¶ 44-45; Pl.'s Dep. at 16:18-:19, 20:25-21:7, 21:24-25:1.

63.     Denied as contradicted by Plaintiff's admissions and testimony and unsupported by specific facts. Plaintiff cannot identify a specific incident underlying this "dozen" calls, admits that he attributed every call received during this time period to ERC based on his assumption that all calls were from ERC, and admits that several calls on his call log did not actually originate from ERC. Plaintiff stated he only had one substantive phone conversation with ERC, which occurred on October 2, 2014 – but he later admitted that even this phone call did not actually come from ERC – it came from a different collector. Pl.'s Resp. at 8, ¶¶ 44-45. Pl.'s Dep. at 51:3-54:22; Pl.'s Resp. at 7, ¶¶ 38-42, 43,[1] 44-51.

64.     Admitted that Plaintiff stated the quoted testimony during his deposition. Denied that Plaintiff spoke to ERC's "employees and/or agents."  Plaintiff stated he only had one substantive phone conversation with ERC, which occurred on October 2, 2014 – but he later admitted that even this phone call did not actually come from ERC – it came from a different collector. Pl.'s Resp. at 8, ¶¶ 44-45. Pl.'s Dep. at 51:3-54:22; Pl.'s Resp. at 7, ¶¶ 38-42, 43, 44-51.

65.     Admitted that Plaintiff stated the quoted testimony during his deposition. Denied that Plaintiff spoke to ERC's "employees and/or agents."  Plaintiff stated he only had one

---

[1] Though Plaintiff marked this paragraph as Controverted, the substance of his denial does not meet the substance of the alleged fact, as Plaintiff does not point to any record evidence of identifying any other specific calls, which he did not later recant or contradict. Pursuant to Local Rule 56.1, this is admitted.

substantive phone conversation with ERC, which occurred on October 2, 2014 – but he later admitted that even this phone call did not actually come from ERC – it came from a different collector. Pl.'s Dep. at 51:3-54:22; Pl.'s Resp. at 7, ¶¶ 38-42, 43, 44-51.

66.     Denied as contradicted by Plaintiff's admissions and testimony and unsupported by specific facts. Plaintiff admitted there was a single time he thought that an ERC representative was rude or discourteous to him and that this call did not actually originate from ERC. Pl.'s Resp. at 8, ¶¶ 44-45.

67.     Admitted/Uncontroverted that Plaintiff made this selection on one call on July 30, 2014, in which Plaintiff selected that he was not Stephanie Yokom and that Stephanie Yokom was not available. Pl.'s Depo. at 20:25-21:20; Decl. of J. Davis at ¶ 14; Acct. Hist. at 1. The second call that connected with the IVR on December 10, 2014, Plaintiff made no selection. Pl.'s Resp. at 2-4, ¶¶ 17-20.[2]

68.     Denied as contradicted by Plaintiff's admissions. Plaintiff admits that ERC began calling him in July 2014, but the call log began in November 2013, before he admits ERC placed its first call to him. Pl.'s Resp. at 6, ¶¶ 25, 36.

69.     Admitted/Uncontroverted.

70.     Admitted/Uncontroverted that ERC placed twenty-one calls to the Subject Telephone Number.

71.     Denied as contradicted by Plaintiff's admissions and testimony and unsupported by specific facts. Plaintiff does not identify any specific call on which he spoke to ERC's representatives. Plaintiff stated he only had one substantive phone conversation with ERC, which occurred on October 2, 2014 – but he later admitted that even this phone call

---

[2] Though Plaintiff marked these paragraphs as Controverted, the substance of his denial does not meet the substance of the alleged fact, as Plaintiff discusses only what he did when speaking with human representatives, and does not discuss any IVR interaction. Pursuant to Local Rule 56.1, these are admitted.

did not actually come from ERC – it came from a different collector. Pl.'s Dep. at 51:3-54:22; Pl.'s Resp. at 7, ¶¶ 38-42, 43, 44-51.

72.    Denied as contradicted by Plaintiff's admissions and testimony and unsupported by specific facts. Plaintiff does not identify any specific call on which he spoke to ERC's representatives. Plaintiff stated he only had one substantive phone conversation with ERC, which occurred on October 2, 2014 – but he later admitted that even this phone call did not actually come from ERC – it came from a different collector. Pl.'s Dep. at 51:3-54:22; Pl.'s Resp. at 7, ¶¶ 38-42, 43, 44-51.

73.    Admitted/Uncontroverted that Plaintiff advised other collector's representatives to stop calling and that Plaintiff sued ERC.

74.    Denied as contradicted by Plaintiff's admissions and testimony and unsupported by specific facts. Plaintiff states that the calls from ERC began in July 2014, but the call log includes notations on calls before this date and notations on calls which Plaintiff admits he spoke to a different collector, or interacted with ERC's IVR system and did not speak with a human representative. Plaintiff stated he only had one substantive phone conversation with ERC, which occurred on October 2, 2014 – but he later admitted that even this phone call did not actually come from ERC – it came from a different collector. Pl.'s Depo. at 51:3-54:22; Pl.'s Resp. at  ¶¶ 15, 17-18, 20, 38-42, 43, 44-51.

75.    Admitted/Uncontroverted.

76.    Admitted/Uncontroverted.

77.    Admitted/Uncontroverted

78.    Mischaracterization of cited evidence. Mr. Davis testified that Plaintiff "could make that claim, sure," in response to a question as to whether it "would be a fact issue"

if his client swears that he spoke to human beings at ERC. Additionally, this was objected to as a legal conclusion, to which Mr. Davis cannot testify. Davis Depo. at 20:21-21:6. He never states whether a jury must decide the question.

79.     Admitted/Uncontroverted.

80.     Admitted/Uncontroverted.

81.     Objection as inadmissible under Federal Rule of Evidence 408.

## ARGUMENT

### I.     Introduction

Plaintiff's overly long Memorandum in Opposition to ERC's Motion for Summary Judgment (the "Response")[3] confuses both the procedural standards and the substantive law which this Court must apply in determining whether entry of summary judgment in ERC's favor is appropriate. When a non-movant fails to cite any probative, specific, factual evidence to contradict the record evidence supporting a motion for summary judgment, there is no *genuine* issue of *material* fact. This remains so even if the non-movant provides generalizations which rehash the allegations of the Complaint, which is all Plaintiff offers here.

Further, Plaintiff offers little, if any, analysis into the arguments made in ERC's Motion for Summary Judgment (the "Motion") or why his claims under the FDCPA and KCPA should withstand the Motion. Accordingly, the bulk of Plaintiff's claims before the Court fail, and ERC is entitled to entry of summary judgment.

### II.     Plaintiff's Response does not demonstrate any issues of material fact sufficient to overcome summary judgment on Plaintiff's claims in Counts I and II.

Plaintiff's statement of additional facts identifies general statements which rehash the conclusory allegations in the Complaint without providing specific, factual support for these

---

[3] Pursuant to Your Honor's Standing Order regarding Page Limitations, Plaintiff's response was limited to 30 pages.

allegations. As a result, Plaintiff's response falls woefully short of meeting the non-movant's standard for defending a properly supported motion for summary judgment under Rule 56 in federal court. Thus, the purported issues of fact raised by Plaintiff are neither genuine, nor material, and ERC is entitled to entry of summary judgment in its favor.

> **A. The current summary judgment standard applied by federal courts requires a party to provide probative, specific facts to either support or oppose summary judgment.**

The current standards applied in federal courts on a motion for summary judgment are supplied by the following trio of Supreme Court decisions: *Anderson v. Liberty Lobby*; *Celotex v. Catrett*; and *Matushita v. Zenith.* In his discussion of the applicable standard, Plaintiff either cites outdated case law, or relies upon applicable cases, yet fails to address matters germane to the specific issues before this Court.

Though *Anderson* cautions against making determinations of credibility, as Plaintiff notes, it also states what kind of evidence can be considered to create an issue of fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 249-50 (1986). In discussing the type of evidence that is sufficient to defend a motion for summary judgment, the Court stated:

> As *Adickes*, *supra*, and *Cities Service*, *supra*, indicate, there is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. [*First Nat. Bank v.*]*Cities Service*, [391 U.S. 253,] 288-289 [1968]. If the evidence is merely colorable, *Dombrowski v. Eastland*, 387 U. S. 82 (1967) (per curiam), or is not significantly probative, *Cities Service*, *supra*, at 290, ***summary judgment may be granted.***

*Anderson*, 477 U.S. at 249-50 (emphasis supplied).

The Court rejected the argument of the non-movant, that its precedent, *Poller*,[4] compels the conclusion that a defendant should "seldom if ever be granted summary judgment where his

---

[4] *Poller v. Columbia Broadcasting Co.*, 368 U.S. 464 (1962).

state of mind is at issue and the jury might disbelieve him or his witnesses as to this issue."[5] *Id.* at 256. The Court stated that this was a misreading of *Poller*, as it did not hold that the plaintiff could defeat a defendant's motion for summary judgment in such a case "without offering any ***concrete evidence*** from which a reasonable juror could return a verdict in his favor and merely asserting that the jury might, and legally could, disbelieve the defendant's denial of [for example] conspiracy or of legal malice." *Id.* (emphasis supplied). The Court discussed further:

> Rule 56(e) [now (c)] itself provides that a party opposing a properly supported motion for summary judgment ***may not rest upon mere allegation or denials of his pleading, but must set forth specific facts*** showing that there is a genuine issue for trial. Based on that Rule, *Cities Service*, 391 U. S., at 290, held that the plaintiff could not defeat the properly supported summary judgment motion of a defendant charged with a conspiracy without offering "any significant probative evidence tending to support the complaint." ***As we have recently said, "discredited testimony is not [normally] considered a sufficient basis for drawing a contrary conclusion."*** *Bose Corp. v. Consumers Union of United States, Inc.*, 466 U.S. 485, 512 (1984). Instead, the ***plaintiff must present affirmative evidence in order to defeat a properly supported motion for summary judgment.*** This is true even where the evidence is likely to be within the possession of the defendant, as long as the plaintiff has had a full opportunity to conduct discovery.

*Anderson*, 477 U.S. at 256-57 (emphasis supplied). As a result of this discussion, and despite the admonition Plaintiff quoted in his response, the Court held the Court of Appeals for the District of Columbia Circuit erred in reversing the trial court's grant of summary judgment.

In *Celotex*, the Court clarified that summary judgment is properly granted where the movant shows an absence of evidence supporting any element of a claim on which the non-movant bears the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). The Court, citing Anderson, stated, "The standard for granting summary judgment mirrors the standard for a directed verdict under Federal Rule of Civil Procedure 50 (a)." *Id.* at 323 (*quoting*

---

[5] Plaintiff's Response cites *Baum v. Gilliam*, 648 F.2d 1292, 1296 (10th Cir. 1981) for the same proposition. Pl.'s Resp. at 15. The quotation contained in the Response from *Baum* is contained in a discussion of *Poller*, *see* 648 F.2d at 1296, but the *Baum* court ultimately ruled summary judgment was properly granted despite the allegations of conspiracy. *Id.* at 1297.

*Anderson*, 477 U.S. at 250). Thus, the burden on a movant, who does not bear the burden of proof on an issue, "may be discharged by 'showing'—that is, pointing out to the district court— that there is an absence of evidence to support the moving party's case." *Id.* at 325. The *Celotex* Court also discussed the policy underpinnings of Rule 56. It stated:

> Summary judgment procedure is properly regarded ***not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules*** as a whole, which are designed "to secure the just, speedy and inexpensive determination of every action." . . . Rule 56 must be construed with due regard not only for the rights of persons asserting claims and defenses that are adequately based in fact to have those claims and defenses tried to a jury, but also for the rights of persons opposing such claims and defenses to demonstrate in the manner provided by the Rule, prior to trial, that the claims and defenses have no factual basis.

*Id.* at 327 (emphasis supplied).

In *Matsushita*, the Court disagreed that the record before the Court required reversal of a grant of summary judgment. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 598 (1986). Discussing an alleged price-fixing conspiracy, the Court stated, "the absence of any plausible motive to engage in the conduct charged is highly relevant to whether a 'genuine issue for trial' exists within the meaning of Rule 56(e)." *Id.* at 596. It continued "Lack of motive bears on the range of permissible conclusions that might be drawn from ambiguous evidence: if petitioners had no rational economic motive to conspire, and if their conduct is consistent with other, equally plausible explanations, the conduct does not give rise to an inference of conspiracy." *Id.* at 596-97. While the *Matsushita* Court applied standards regarding inferences in the antitrust context, its reasoning is equally applicable in any case where there is no evidence of ill intent.

The Tenth Circuit has applied the standards discussed in this trio of cases. In *Bacchus Industries*, a case cited in the Response, it stated, "[t]he party opposing the motion must present

sufficient evidence in ***specific, factual form*** for a jury to return a verdict in that party's favor." *Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir. 1991) (emphasis supplied) (*citing Clifton v. Craig*, 924 F.2d 182, 183 (10th Cir. 1991). The *Bacchus* court affirmed summary judgment, stating that the plaintiff "failed to provide any credible evidence." *Id*. at 893. *See also Clifton*, 924 F.2d at 183 (holding that any disputes of fact raised were not "genuine" because the non-movant did not present specific factual evidence which could support a jury award).

Plaintiff's citation to *Pierce* is misplaced as it involves inferences to be drawn from *specific* facts presented by the non-movant and counsels against the grant of any motion for summary judgment. *See Pierce v. Ford Motor Co.*, 190 F.3d 910, 915-16 (4th Cir. 1954). This pre-*Celotex* Fourth Circuit opinion runs counter to the Supreme Court's instruction in *Celotex* that summary judgment is an "integral part of the Federal Rules[.]" 477 U.S. at 327. *Pierce's* attempt to distinguish the standards for directed verdict and summary judgment is also no longer valid in light of the holdings in *Anderson* and *Celotex* that the standards are the same, "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52.[6]

Finally, the Tenth Circuit allows a trial court considering summary judgment to disregard a party's sworn statements when they conflict with one another. *Robert v. Bd. of Cnty. Comm'rs of Brown Cnty.*, No. 08-2150-EFM, 2011 WL 836729, at * n.1 (D. Kan. March 3, 2011) *aff'd* 691 F.3d 1211 (10th Cir. 2012) (*citing Steele v. Kroenke Sports Enters., L.L.C.*, 264 Fed. Appx. 735, 744 (10th Cir. 2008). Relevant to the determination of whether contradicted statements can be disregarded is whether the person making the statement learned new information between the

---

[6] Likewise, Plaintiff's citation to *Baum* for the proposition that summary judgment is not appropriate when motive or intent is an element of a claim is similarly outdated, as *Anderson* and *Matsushita*, both concern evidence of ill intent.

two sworn statements. *See Steele*, 264 Fed. Appx. at 744. *See also Anderson*, 477 U.S. at 256 ("As we have recently said, 'discredited testimony is not [normally] considered a sufficient basis for drawing a contrary conclusion.' ").

Accordingly, in order to withstand entry of summary judgment on his claims, Plaintiff must come forward with specific factual evidence not contradicted by the Plaintiff's own testimony, in order to establish a genuine dispute of fact. As discussed below, Plaintiff's Response does not accomplish this task.

### B. The evidence cited in Plaintiff's response does not create a *genuine* issue of *material* fact and summary judgment is properly entered for ERC.

The Response largely admits the facts stated in ERC's Motion for Summary Judgment, or else states that they are not controverted. The denials offered by Plaintiff, however, do not meet the substance of the facts that he is attempting to controvert.

Plaintiff's first set of denials do not meet the substance of ERC's statement. In paragraphs 17-20 of ERC's Statement of Facts, ERC discusses two specific calls that connected to the Subject Telephone Number, during which a pre-recorded voice message was played. Plaintiff's denials of these paragraphs are premised on the conclusory allegation that Plaintiff spoke with ERC's representatives on different occasions and that more than two calls connected between he and ERC. These denials do not address the content of the communications during the two calls discussed in paragraphs 17-20 of ERC's Motion, thus, under Local Rule 56.1, the content of these calls is uncontroverted.

Plaintiff's denial of paragraph 43, likewise, does not meet the substance of the fact stated in ERC's Motion. ERC's Motion stated that Plaintiff had specified two calls on his call log during which he spoke to one of ERC's representatives and cited his interrogatory responses— where he was asked to "identify all instances on which you spoke to a live person from ERC"

and identified only one call, occurring on August 20, 2014[7]—and his deposition testimony—where he identified the sole instance where he claims an employee was rude to him, occurring on October 2, 2014.

Plaintiff does not point to any record evidence in which Plaintiff *specifics* another call in which he claims to have spoken to a representative of ERC. The exchange in Plaintiff's deposition testimony cited in the response merely discusses generally Plaintiff's vague recollection about a general fact pattern, without providing any specificity as to the calls. This exchange essentially rehashes the allegations of the Complaint, without providing any facts to support them.

Additionally, Plaintiff has recanted portions of his responses during this exchange. *Compare* Pl.'s Depo. at 16:5-9 ("The calls from ERC began in approximately 2013") *with* Pl.'s Resp. at 2, ¶15 (admitting "Beginning on July 23, 2014, ERC began placing calls to the 4969 Number"). *Compare* Pl.'s Depo. 18:2-:11 (discussing call with "Ms. Williams" who stated she was with ERC and was rude to Plaintiff) *with id.* at 51:3-54:22 (admitting that call with "Ms. Williams" was with another collector seeking same account holder).

Furthermore, the additional "facts" stated by Plaintiff's response are contradicted by Plaintiff's own sworn testimony and amount to nothing more than a restatement of his conclusory pleadings without any probative factual support.

Despite Plaintiff's allegation in paragraph 63 that he spoke to ERC's representatives "approximately a dozen times," he has not, and cannot, identify a specific time in which he did

---

[7] This interrogatory answer explicitly contradicts Plaintiff's earlier sworn deposition testimony that he could recall only one substantive conversation with an ERC representative, and under *Steele*, it need not be considered here. Pl.'s Depo. at 50:6-:12. Furthermore, Plaintiff now admits that the October 2, 2014 call was the only substantive conversation he could recall with an ERC representative and also that the call was actually with a third-party and not ERC. Pl.'s Resp. at 8 ¶¶ 44-45.

so.[8] Additionally, Plaintiff admits his recollection is blurred by receiving calls from other collectors seeking the same third-party and identifies at least five calls which he mistakenly attributed to ERC instead of other collectors, whose representative he spoke with. *See* Pl.'s Depo. at 51:3-54:22; Pl.'s Resp. at 7, ¶¶ 40-42.

Likewise, Plaintiff's allegation in paragraph 62 is belied by his testimony that certain calls were dead air, that he did not answer some calls, and that he met with recordings in other calls. Pl.s' Depo. at 16:18-:19, 20:25-21:7. Thus, his generalization regarding what he claims to have said "each time Plaintiff received a collection call . . ." from ERC is belied by his own contradictions. Plaintiff's contradictions continue where, on the one hand, he states that the entirety of the calls on his call log are calls from ERC (an assumption he reached based on "investigat[ing] the number on Google on the Internet,"[9] and then presuming that all unknown calls he was receiving at the time originated from ERC,[10]), yet later admits that several of the calls on the log were, in fact, not from ERC,[11] including the only call for which Plaintiff remembered any specifics due to the caller being discourteous to him.[12] Pl.'s Resp. at 8, ¶ 44-45. Additionally, Plaintiff's admissions foreclose his allegations in paragraphs 68, as he admits that ERC did not begin calling him until July 2014, which also makes his allegation regarding the increased frequency of calls for Ms. Yokom in 2013 immaterial to his claims against ERC.

Plaintiff cannot identify a specific call during which he informed ERC's representatives that it was calling the wrong number. This is fully consistent with ERC's records and Verizon's records. His generalized statements, relying on his call log, which he admits is based in part on

---

[8] Plaintiff admits that he recalls only one substantive conversation with ERC, a call occurring on October 2, 2014. Pl.'s Resp. at 8, ¶ 44. He later admits that this call did not actually originate from ERC. *Id.* at ¶ 45.
[9] Pl.'s Depo. at 28:7-29:1.
[10] Pl.'s Resp. at 8, ¶ 51.
[11] Pl.'s Resp. at 7, ¶¶ 38-42.
[12] Despite this admission, Plaintiff now alleges other ERC representatives were rude to him in paragraph 66 of his statement of facts. The record evidence, and plaintiff's admissions, have proved this allegation false.

hearsay and assumptions, and which he admits is not as accurate as ERC's and Verizon's records.[13] Accordingly, Plaintiff has not provided any probative, credible evidence which is not discredited by Plaintiff's own sworn statements regarding ERC's calls to the Subject Telephone Number. His generalizations, to which he cannot subscribe any specific calls, are not the type of "specific," "concrete," and "factual" evidence contemplated by the *Anderson* and *Bacchus* courts. They are, at best, merely colorable. Consequently, he has not created any *genuine* issues of *material* fact regarding the content of the calls between he and ERC, and ERC is entitled to entry of summary judgment.

### III.   Plaintiff misapprehends the Kansas Consumer Protection Act and has provided evidence neither of his standing under the Act nor how ERC purportedly violated the Act.

The Response does not alter ERC's entitlement to entry of summary judgment on Plaintiff's claim under the Kansas Consumer Protection Act (KCPA). When there are no issues of material fact, the court must only apply the law pertaining to the claim. *Dayton Hudson Corp. v. Macerich Real Estate Co.*, 812 F.2d 1319, 1323 (10th Cir. 1987) (affirming grant of summary judgment). Plaintiff's Response does not provide any record evidence to support the necessary elements of his claim under the KCPA that he is a statutorily defined consumer and that ERC violated the act's provisions.

### A.   Plaintiff is not made a "consumer" due to post-transaction interactions with a supplier.

Plaintiff has not provided Defendant, or this Court, with any authority to find that he is a consumer entitled to seek redress under the KCPA. Plaintiff cites *Ellibee* as providing a three part test to determine whether a person is a consumer under the KCPA and claims that he meets this threshold requirement. Resp. at 16. Plaintiff takes this test out of context. This "test" was

---

[13] Pl.'s Resp. at 2, ¶ 15, 7, ¶¶ 36-37, 8, ¶ 49.

discussed in the context of determining whether a person was a third-party beneficiary to a transaction with standing to sue as a "consumer" defined by the Act. Thus, it must be read with the preceding quote, which states "a third-party beneficiary may qualify as a consumer of goods or services 'as long as the transaction was specifically required by or intended to benefit the third party and the good or service was rendered to benefit the third party.'" *Ellibee v. Aramark Correctional Servs., Inc.*, 154 P.3d 39, 41 (Kan. App. Ct. 2007) (internal citations omitted).

     *Ellibee* confirmed that a person must still be a consumer to have standing to sue under the KCPA and affirmed the motion to dismiss due to the plaintiff's failure to qualify as a consumer or third-party beneficiary with respect to the supplier. The District of Kansas, applying *Ellibee*, confirms this reading. *See Krause v. Nationstar Mortg., LLC*, no. 15-2682-CM, 2015 WL 4041662 at *3 (D. Kan. July 1, 2015); *Hayes v. Find Track Locate, Inc.*, 60 F. Supp. 3d 1144, 1152-54 (D. Kan. 2014).

     In *Hayes*, the court granted summary judgment on KCPA claims brought by a man's wife and son, who were called by a lender to collect a debt incurred by the man in purchasing a truck. The court found that the man was the only one who was involved in the transaction and the lender's interactions with both the wife and son, attempting to locate the man and his truck, did not make them consumers under the KCPA. Thus, the court held they lacked standing to bring a claim under the act. *Hayes*, 60 F. Supp. 3d at 1154.

     In *Krause*, Judge Murguia dismissed a woman's claims under the KCPA based on allegedly unconscionable and deceptive telephone calls made to her to collect on an outstanding debt owed by her late husband. 2015 WL 4041662, at *1. The court found the wife was not made a consumer either by her marital connection or by virtue of receiving those phone calls. *Id.* at *2. It reasoned "[p]laintiff did not participate in the purchase of either property, did not sign the

promissory notes, and is not liable for the debt. Plaintiff relies heavily on the statute's purpose to be construed liberally to protect the consumer; however, ***the plain language indicates that the liberal construction of the statute applies only after the consumer has been identified***." *Id.* (emphasis supplied).

Plaintiff provides no evidence to suggest that he was a third-party beneficiary of the services provided to the third-party account holder, Ms. Yokom, by ERC's customer, AT&T, and repeatedly disclaims having any relation to her. As in *Hayes* and *Krause*, he is not made a third-party beneficiary, or otherwise provided with a right of action under the act, merely for being contacted by an entity attempting to collect a debt incurred by a third-party. Like the plaintiffs in *Ellibee, Hayes*, and *Krause*, plaintiff lacks standing to pursue a claim under the KCPA and ERC is entitled to entry of summary judgment.

This foregoing analysis is unaltered by Plaintiff's citation to *Miller*. Plaintiff's assertion that "[n]othing in the *Miller* holding requires that the claimant/litigant be the original consumer, only that the parties to the original consumer transaction were a 'supplier' and a 'consumer' "[14] is inapposite as *Miller* did not address an individual's standing to sue under the KCPA.

The *Miller* Court's holding was not as broad as Plaintiff suggests. It did not hold that an action will lie under the KCPA if the three conditions quoted in the Response exist, rather it held a debt collector is a supplier, as defined by the act, if the three elements exist. *See Miller*, at 329 ("We hold that an independent debt collection agency falls within the definition of a "supplier" and is subject to the provisions of the KCPA, if it is found that three specific conditions exist . . .").[15] This is only one aspect of the substantive claim, i.e., whether the Defendant is a supplier,

---

[14] Pl.'s Resp. at 17 (*citing State ex rel. Miller v. Midwest Serv. Bureau of Topeka, Inc.*, 623 P.2d 1343, 1349 (Kan. 1981)).
[15] Plaintiff's assertion that "all of these requirements are satisfied" is unfounded as he has produced no evidence that the transaction between AT&T and Ms. Yokom was a "consumer transaction" taking place in the state of Kansas

and does not address whether the Plaintiff is a consumer. Accordingly, the test cited by Plaintiff does not establish Plaintiff's standing under the act, and does not grant standing where it would not otherwise exist.

This distinction is recognized by the *Hayes* court which applied the *Miller* decision to the defendant's arguments that it was not a supplier subject to the KCPA. The court applied *Miller* and found the defendant was a supplier in that it was seeking to enforce a consumer transaction. *Hayes*, 60 F. Supp. 3d at 1153-54. But this did not prevent the court from finding two of the three plaintiffs were not consumers with standing to assert a claim under the KCPA against the defendant. *Id.*

**B. Likewise, Plaintiff has not identified any conduct which is deceptive or unconscionable under the KCPA.**

Plaintiff's only attempt to actually establish a violation of the act, irrespective of his standing, is by citation to the KCPA and production of evidence of his registration under the Kansas No-Call Act. *See* Pl.'s Resp. at 17-18. Plaintiff's registration under the act, however, is not a material fact, as Plaintiff has mischaracterized the act's requirements and prohibitions.

The Kansas No-Call Act does not require the "caller or user of an auto-dialer consult the no-call list and delete from the calling list all telephone number appearing on such list"[16] nor does it "prohibit[] any calls to any telephone number appearing on the no-call list."[17] Rather the requirement applies only to "telephone solicitors" making "unsolicited consumer telephone calls." K.S.A. § 50-670a (a). Likewise, the prohibition in the no-call act states, "[n]o ***telephone solicitor*** may make or cause to be made any ***unsolicited consumer telephone calls*** to any

---

and has admitted that service was provided under that account to an address in Florence, Colorado. *See* Mot. at 2, 12; Pl.'s Resp. at 2, ¶ 11.
[16] Resp. at 17 (*citing* KSA § 50-670a(a)).
[17] Resp. at 18 (*citing* KSA § 50-670a(b)).

consumer if the consumer's telephone number or numbers appear on the no-call list." *Id.* at § 50-670a (c).

The act provides the following relevant definitions:

"Unsolicited consumer telephone call" means a consumer telephone call other than a call made:
    (A)  In response to an express request or with the express written agreement of the person called;
    (B)  ***primarily in connection with an existing debt or contract, payment or performance of which has not been completed*** at the time of such call[.]

*Id.* at § 50-670 (3)(A)-(B).

"Consumer telephone call" means a call ***made by a telephone solicitor*** to the residence or mobile telephone number of a consumer ***for the purpose of soliciting a sale of any property or services to the person called***, or for the purpose of soliciting an extension of credit for property or services to the person called, or for the purpose of obtaining information that will or may be used for the direct solicitation of a sale of property or services to the person called or an extension of credit for such purposes.

*Id.* at § 50-670 (1).

"Telephone solicitor" means any natural person, firm, organization, partnership, association or corporation ***who makes or causes to be made a consumer telephone call***, including, but not limited to, calls made by use of automatic dialing-announcing device.

*Id.* at § 50-670 (4).

Any call placed by ERC to the number registered under the no-call act was not a "consumer telephone call" and ERC is not a "telephone solicitor." Plaintiff admits ERC is not a telemarketer and does not engage in telephone solicitation. Pl.'s Resp. at 2, ¶¶ 7-8. Further he admits all calls to the registered number were placed in an attempt to reach the account holder and to collect on the account from her. *Id.* at ¶16. Moreover, ERC never attempted to sell any good or services on calls to the registered number. *Id.* at 6, ¶ 31.

Furthermore, even if the calls could be considered "consumer telephone calls," which they cannot, they are not "unsolicited consumer telephone calls" because it is undisputed ERC was attempting to collect on an account owed by Ms. Yokom when it made the calls. The fact that Plaintiff did not owe ERC or its customer any money is irrelevant to ERC's ***purpose*** in placing the call to the phone number associated with Ms. Yokom's account, which is what the no-call act is concerned with.

The Response omits any evidence or argument establishing Plaintiff's standing to bring his claim under the KCPA. While ERC acknowledges that it is a "supplier" under the KCPA when it attempts to enforce "consumer transactions" in Kansas, that, standing alone, does not create standing for a non-consumer. Likewise, there has been no showing of unconscionable or deceptive conduct on ERC's part that would violate the act. Accordingly, ERC is entitled to entry of summary judgment on the KCPA claim.

## IV. Plaintiff's discussion of the FDCPA does not address ERC's arguments why summary judgment is appropriate and cites cases applying the wrong legal standard.

Though the Response provides little argument in support of Plaintiff's FDCPA claim, it quotes at length from a 2015 opinion from Judge Murguia of the District of Kansas.[18] Though Judge Murguia's opinion is well-reasoned, the opinion was issued in response to a motion to dismiss the plaintiff's complaint and, thus, the standards applied in the opinion are inapposite to the issues before this Court.

In *Morris*, the plaintiff brought suit under section 1692d(5) of the FDCPA for having calls directed to her telephone number seeking to collect from another individual. *Morris v. Portfolio Recovery Assocs., LLC*, 2:14-cv2612, 2015 WL 4523855, at * 1 (D. Kan. July 27,

---

[18] *See* Pl.'s Resp. at 19-22 (*quoting Morris v. Portfolio Assocs., LLC*, No. 2:14-cv-02612, 2015 WL 4523855 (D. Kan. 2015)).

2015). The collector moved, under Rule 12(b)(6) for dismissal of the complaint, arguing that conduct complained of was actually prohibited by section 1692c(c). *Id.* at *2. The court found that, as a non-debtor, the plaintiff would not have standing under section 1692c, which is limited to consumers (i.e. debtors) by its plain language, but no such limitation is present when a non-debtor can show that a collector phoned him or her repeatedly or continuously with intent to harass or abuse. *Id.*

The *Morris* court found that a pleaded allegation that calls continued after advising the collector it had the wrong number, and alleging that the collector had records of the calls, was sufficient to meet the notice pleading standard of *Twombly*, finding that detailed allegations are not necessary to provide notice of one's claims on a straightforward FDCPA claim. *Id.* at *3. In support of this finding, the *Morris* court cited at length a second opinion regarding a motion to dismiss and applying the *Twombly* standard, *Jeter v. Alliance One Receivables Mgmt.,* No. 10-2024-JWL, 2010 WL 2025213 (D. Kan. May 20, 2010).

In *Jeter v. Alliance One*, the court ruled on pending motions to dismiss and to amend the complaint. *Id.* at *1. The motion to dismiss, like in *Morris*, also presented an argument that the plaintiff did not have standing to pursue claims under sections 1692d, 1692e, and 1692f because the plaintiff understood that he was not the target of collection efforts when he received phone calls. The court rejected this argument. *Id.* at *2-3. The defendant alternatively argued that the proposed complaint, which alleged the plaintiff received calls and the defendant had records of these calls, did not state a claim under the FDCPA because it did not identify the "date on which plaintiff first received a call, how many calls he received, or the specific content of those calls[.]" *Id.* at *5. Judge Lungstrum rejected this argument and held that the facts alleged were sufficient

to meet the *Twombly* standard, reasoning that the plaintiff need only establish "plausibility and fair notice" to withstand a ***motion to dismiss*** under the *Twombly* standard. *Id.*

Here, in opposing ***summary judgment***, Plaintiff must exceed the *Twombly* standard and "may not rest upon mere allegation or denials of his pleading, but must set forth ***specific facts*** showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256 (emphasis supplied). While he was permitted to plead broadly, he must set forth specific, factual evidence to oppose summary judgment. *Bacchus*, 939 F.2d at 891. Thus, both *Morris* and *Jeter* are inapposite.[19]

Moving past Plaintiff's attempt to apply the wrong standard for the claims at issue here, Plaintiff further fails to offer any colorable argument why this claim should proceed past summary judgment. To the extent Plaintiff is arguing that he has standing to assert his claims under section 1692d(5), ERC never challenged that. With respect to the FDCPA claims, ERC only challenged his standing to pursue a claim under section 1692c, which he originally pled in the Complaint, and which the *Morris* court acknowledges he would not have. With respect to the claim under section 1692d(5), ERC has established the lack of any genuine issue of fact as to ERC's intent.

ERC's Motion argued that there was no record evidence by which Plaintiff could show ERC "[c]aus[ed] a telephone to ring or engag[ed] any person in telephone conversation repeatedly or continuously with ***intent*** to annoy, abuse, or harass any person at the called number."[20] *See* Def.'s Mot. at 21-24 (emphasis supplied). Plaintiff's Response has identified no such record evidence, nor has Plaintiff challenged ERC's contention that he must establish that intent under section 1692d(5), as the conduct challenged falls squarely within that subsection.

---

[19] The only case mentioned in the Response discussing summary judgment under the FDCPA, *Franklin v. Meadows*, reversed a grant of summary judgment under section 1692d of the FDCPA on a claim involving more than 300 calls, and where the collector's own records showed it made at least 70 calls to the plaintiff after being instructed that it was the wrong number. 414 *Fed. Appx.* 230, 234

[20] 15 U.S.C.A. § 1692d(5) (2015).

*See* Def.'s Mot. at 21 (*citing Cokeley v. Midland Credit Mgmt.*, No. 13-2518JWL, 2014 WL 5341919, at *4 n.2). *See also Neu v. Genpact Servs., LLC*, No. 11-CV-2246, 2013 WL 1773822, at *3 (S.D. Cal. Apr. 24, 2013); *Stirling v. Genpact Servs., LLC*, No. 2:11-cv-6369, 2012 WL 952310 (C.D. Cal. Mar. 19, 2012). Plaintiff instead, admits that all calls were placed to the Subject Telephone Number in an attempt to reach an account holder to collect a debt from her,[21] ERC is a debt collector which is not engaged in telemarketing or telephone solicitation,[22] and did not attempt to collect any money from Plaintiff, or sell him any goods or services.[23] Thus ERC had no motive to call the Subject Telephone Number with the intent to harass Plaintiff. Where there is the absence of a plausible motive to engage in the alleged conduct, there is not a genuine issue for trial. *See Matsushita*, 475 U.S. at 596. As an entity collecting a debt owed by Ms. Yokom, ERC did not have any rational economic motive to harass Plaintiff, especially where it never sought payment from him. ERC's conduct is fully consistent with attempting to contact Ms. Yokom because its records did not reflect any indication that she could not be reached at the Subject Telephone Number.

Furthermore, as discussed more thoroughly above, Plaintiff has produced no specific factual record evidence that demonstrates he ever informed ERC that it was calling the wrong number for Ms. Yokom. ERC's records affirmatively reflect the lack of receipt of any notice it was calling the wrong number for Ms. Yokom until it received a letter from counsel for Plaintiff which specifically stated the telephone number, at which time the calls to Plaintiff ceased. Plaintiff does not impugn ERC's records and admits that ERC's records and Verizon's records are more reliable and accurate than his log or recollection.[24] He admits that ERC maintains

---

[21] Pl.'s Resp. at 2, ¶¶ 15-16.
[22] Pl.'s Resp. at 1 ¶¶ 7-8.
[23] Pl.'s Resp. at 6, ¶¶ 30-31.
[24] Pl.'s Resp. at 2, ¶ 15, 7, ¶¶ 36-37, 8, ¶ 49.

recordings of all of its calls where the recipient is connected with a live representative of ERC and that ERC has no record of engaging in a live conversation with Plaintiff.[25] And he admits his call log is premised on hearsay and presumption,[26] and calls he previously associated with ERC did not originate from ERC.[27] Plaintiff has not specified a single call where he claims ERC's records to be inaccurate. Each of the calls which he has specifically identified as having resulted in him telling the representative that he was not the sought party were disclaimed and contradicted by his own sworn statements.

Accordingly, like the claim under the KCPA, ERC is entitled to entry of summary judgment on Plaintiff's claims under the FDCPA. Contrary to Plaintiff's assertion, the fact that it was attempting to collect on a debt from a third-party when it placed calls to the Subject Telephone Number, does not create "strict liability"[28] necessitating a jury trial on the claim. Instead, Plaintiff was required to come forward with evidence that ERC caused his phone to ring either continuously or repeatedly, and that it did so ***with the intent to harass or abuse him*** to meet his burden in opposing summary judgment on this claim. He has provided evidence of neither. Accordingly, ERC is entitled to entry of summary judgment on Plaintiff's claims under the FDCPA.

V.    **ERC concedes that a genuine issue of material fact exists as to Plaintiff's claim for up to seven violations of the TCPA.**

Plaintiff's Response has brought it to ERC's attention that its corporate representative, Jason Davis, testified at deposition that seven calls were placed using an "autodialer." The term "autodialer" is not a term defined in the Telephone Consumer Protection Act. Because the statement by Mr. Davis fails to specify the basis for his use of that term in connection with the

---

[25] Pl.'s Resp. at 5, ¶ 21.
[26] Pl.'s Depo. at 28:7-29:1; Pl.'s Resp. at 8, ¶¶ 50-51.
[27] Pl.'s Depo. at 51:3-54:22; Pl.'s Resp. at 7, ¶¶ 40-42.
[28] Pl.'s Resp. at 23. Notably, Plaintiff does not offer any legal support for this contention.

calls at issue, i.e., whether the reference was based on the potential use of an artificial or prerecorded message, or whether the reference was an admission that the system used satisfied the elements of an "automated telephone dialing system" under the TCPA, ERC must concede that the ambiguous statement creates a genuine issue of fact as to whether the seven calls at issue violated the TCPA. Nonetheless, ERC reserves its argument that the system used did not, in fact, satisfy the elements of an "automated telephone dialing system" under the TCPA and, therefore, that the lack of use of a prerecorded or artificial message on all but two of the calls at issue precludes a finding that ERC violated the TCPA as to the other five calls.

## VI.   Conclusion

While Plaintiff cites ample authority throughout his Response, he neglects to apply the cited law to the facts of this case or provide any probative evidence ERC ever called his telephone number with the ***intent*** to do anything but collect on an overdue obligation from a third-party, Ms. Yokom. It is undisputed that Plaintiff was not a party to a consumer transaction with respect to ERC and, thus, has no standing under the KCPA. It is further undisputed that Plaintiff now admits the only specific communication he identified for giving notice to ERC of the wrong number, was actually a communication with a third-party, and not with ERC.

As a result, he has failed to respond to the arguments raised in ERC's Motion for Summary Judgment on his claims under the KCPA and FDCPA. ERC is entitled to judgment as a matter of law because Plaintiff lacks standing under the KCPA and because ERC committed no violation of either act.

While it is unfortunate that Mr. Wright acquired a telephone number previously used by an individual whom multiple collectors have been attempting to reach since 2008, that unfortunate circumstance does not establish a basis for liability against ERC. In July of 2014,

ERC began making calls to the Plaintiff's number, in a good faith effort to perform legitimate collection services for its client. Upon first receipt of notice from Plaintiff's counsel regarding that the number no longer belonged to the individual ERC was attempting to reach, it immediately ceased communications to the number. A good faith, yet mistaken, effort to reach an individual at her last known telephone number violates neither the KCPA, nor the FDCPA.

Accordingly, ERC respectfully requests this Court enter summary judgment in its favor.

**MARTIN, PRINGLE, OLIVER, WALLACE & BAUER, LLP**

*/s/ Matthew P. Clune*
Scott B. Haines KS #17509
Matthew P. Clune KS #21064
9401 Indian Creek Pkwy
Building 40, Suite 1150
Overland Park, Kansas 66210
sbhaines@martinpringle.com
mpclune@martinpringle.com
Phone: 913-491-5500
Fax: 913-491-3341

And


**SMITH, GAMBRELL & RUSSELL, LLP**

Scott S. Gallagher
Florida Bar No. 0371970
Smith, Gambrell & Russell, LLP
50 North Laura Street, Suite 2600
Jacksonville, Florida 32202
Telephone: (904) 598-6111
Facsimile: (904) 598-6211
Email: sgallagher@sgrlaw.com
*Admitted Pro Hac Vice*

ATTORNEYS FOR DEFENDANT

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on August 5, 2016, I electronically filed the foregoing with the Clerk

of the Court by using the CM/ECF system, which will send a notice of electronic filing to:

A. Scott Waddell
Waddell Law Firm, LLC
2029 Wyandotte Street
Suite 100
Kansas City, MO 64108
scott@aswlawfirm.com
*Attorney for Plaintiff*

*/s/ Matthew P. Clune*
Attorney