# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

WILLIAM L. WRIGHT,

      *Plaintiff,*

  vs.

                                    Case No. 15-1268-EFM-KGG

ENHANCED RECOVERY COMPANY, LLC,

      *Defendant.*

## MEMORANDUM AND ORDER

In 2014, Plaintiff William Wright began receiving phone calls from Defendant Enhanced Recovery Company, LLC, regarding a debt owed to AT&T. But the debt was owed by Stephanie Yokom, and not William Wright. Wright's phone was ringing because Enhanced Recovery was calling a wrong number, and it did so 21 times. Wright claims that he informed Enhanced Recovery that the debt was not his and asked that they stop calling, and yet, the calls persisted. And so he filed suit, alleging violations of the Fair Debt Collection Practices Act ("FDCPA"), the Kansas Consumer Protection Act ("KCPA"), and the Telephone Consumer Protection Act ("TCPA"). Enhanced Recovery now seeks summary judgment on both the

FDCPA and KCPA claims (Doc. 34).[1]  For the reasons stated below, the Court grants in part and denies in part Enhanced Recovery's motion.

## I.  Factual and Procedural Background

In 2013, AT&T hired Enhanced Recovery, a collection agency, to collect a debt owed by Stephanie Yokom.  Enhanced Recovery's records listed Yokom's phone number as one ending in 4969.  On July 23, 2014, Enhanced Recovery began calling the 4969 number in an attempt to reach Stephanie Yokom and collect the debt owed to AT&T.

The problem is that the 4969 number did not belong to Stephanie Yokom.  It belonged to William Wright.  Wright is a 64 year old man who is permanently disabled and suffers from end-stage renal disease.  His 4969 phone number has been on the National Do Not Call Registry since 2008.  Nonetheless, Enhanced Recovery called him 21 times in 2014 and 2015.

During this period, Enhanced Recovery used two different systems to make phone calls. Up until December 2014, Enhanced Recovery's system would call the number, deploy a prerecorded voice message, and use an interactive voice response system ("IVR").  The IVR system allowed the call recipient to interact with the system and select from various options. According to Enhanced Recovery, the IVR system allowed the recipient to confirm or deny that he was the sought party.  If the recipient denied he was the sought party, he could indicate that either the sought party was currently unavailable or the caller had reached the wrong number.

---

[1] Enhanced Recovery initially sought summary judgment on Wright's TCPA claims as well.  Those claims arose from the fact that some of the calls may have been placed using an auto-dialer in violation of 47 U.S.C. § 227(b)(1)(A)(iii).  In its reply brief, Enhanced Recovery conceded that a genuine issue of material fact existed with regard to the use of an auto-dialer.  Therefore, the Court will consider Enhanced Recovery's motion for summary judgment on the TCPA claims withdrawn and consider only his motions on Wright's FDCPA and KCPA claims.

After December 2014, Enhanced Recovery used a system that was incompatible with a prerecord message or an IVR system.

There is some dispute as to what transpired when these 21 phone calls were made. Wright did not answer every call, but claims that whenever he did he explained that they had a wrong number and asked to be removed from their records and placed on a do-not-call list. Wright contends that he spoke to a human representative at least a dozen times and was usually told that he would not be called again. Wright claims that each of these conversations lasted two minutes or less. Although Wright claims he spoke to a live person dozens of times, he could only recall the specific details of one of those calls. That call featured a discussion between Wright and a Ms. Williams. Wright testified that he remembered the call because Ms. Williams was rude to him. Although he initially believed the Ms. Williams phone call came from Enhanced Recovery, it was later determined that Ms. Williams was calling on behalf of a different company called Credence Resource Management. Nevertheless, Wright testified that the majority of wrong-number calls came from Enhanced Recovery, and he informed the callers several times that they had the wrong number. Despite his pleas that the calls stop, Enhanced Recovery continued to call.

Conversely, Enhanced Recovery maintains that whenever a recipient is connected with a live representative, that call is automatically recorded. Enhanced Recovery did not have any call recordings for its calls to the 4969 number, suggesting that Wright never actually spoke to a live representative. Enhanced Recovery's records also indicate that, when given the option, Wright never selected the IVR option that would inform Enhanced Recovery that it had called the wrong number.

Enhanced Recovery never requested any payment from Wright or offered to sell him any goods or services.   On July 20, 2015, Wright's attorney sent Enhanced Recovery a letter informing it that Wright, and not Yokom, was receiving calls placed to the 4969 number. Enhanced Recovery immediately removed the 4969 number from its account and ceased calling Wright.   Wright filed suit shortly thereafter in Sedgwick County District Court, alleging violations of the FDCPA, the KCPA, and the TCPA.   Enhanced Recovery timely removed the action to this Court and now seeks summary judgment on Wright's KCPA and FDCPA claims.

## II.      Legal Standard

Summary judgment is appropriate if the moving party demonstrates that there is no genuine issue as to any material fact, and the movant is entitled to judgment as a matter of law.[2] A fact is "material" when it is essential to the claim, and issues of fact are "genuine" if the proffered evidenced permits a reasonable jury to decide the issue in either party's favor.[3]   The moving party bears the initial burden of proof, and must show the lack of evidence on an essential element of the claim.[4]   If the moving party carries this initial burden, the non-moving party that bears the burden of persuasion at trial may not simply rest on its pleading but must instead "set forth specific facts" from which a rational trier of fact could find for the non-moving party.[5]   These facts must be clearly identified through affidavits, deposition transcripts, or incorporated exhibits—conclusory allegations alone cannot survive a motion for summary

---

[2] Fed. R. Civ. P. 56(a).

[3] *Haynes v. Level 3 Commc'ns, LLC*, 456 F.3d 1215, 1219 (10th Cir. 2006).

[4] *Thom v. Bristol-Myers Squibb Co.*, 353 F.3d 848, 851 (10th Cir. 2003) (citing *Celotex Corp. v. Cartrett*, 477 U.S. 317, 322-23 (1986)).

[5] *Id.* (citing Fed. R. Civ. P. 56(e)).

judgment.[6]   To survive summary judgment, the non-moving party's evidence must be admissible.[7]   The Court views all evidence and reasonable inferences in the light most favorable to the party opposing summary judgment.[8]

### III.   Analysis

Wright brings claims for violations of the Kansas Consumer Protection Act ("KCPA"), the Fair Debt Collection Practices Act ("FDCPA"), and the Telephone Consumer Protection Act ("TCPA").  Enhanced Recovery seeks summary judgment on the KCPA and FDCPA claims.

**A. Wright is not a consumer as understood in the KCPA.**

The KCPA protects consumers from suppliers who commit deceptive and unconscionable practices.[9]   Wright alleges that Enhanced Recovery violated the KCPA with conduct that was both deceptive and unconscionable.   Wright contends that it was both deceptive and unconscionable for Enhanced Recovery to repeatedly call and contact him about a debt that did not belong to him, despite his pleas for the calls to stop.   Wright also claims that Enhanced Recovery's pattern of conduct, when taken in its totality, was both deceptive unconscionable.

Enhanced Recovery argues that with respect to the debt it sought to collect, Wright is not a consumer and thus does not have standing to bring a KCPA claim.[10]   The KCPA is to be

---

[6] *Mitchell v. City of Moore, Okla.*, 218 F.3d 1190, 1197-98 (10th Cir. 2000) (citing *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670-71 (10th. Cir. 1998)).

[7] *Adams v. Am. Guar. & Liab. Ins. Co.*, 233 F.3d 1242, 1246 (10th Cir. 2000).

[8] *LifeWise Master Funding v. Telebank*, 374 F.3d 917, 927 (10th Cir. 2004).

[9] K.S.A. § 50-623(b).

[10] Wright briefed at length as to whether Enhanced Recovery was a supplier, even though that fact is undisputed—the parties stipulated in the Pretrial Order that Enhanced Recovery is a supplier as understood in the KCPA.  The issue now before the Court is whether Wright is actually a consumer.

construed liberally.[11]  But there are still limits to the act.  Although the act covers a wide range of transactions, it only applies to those between a supplier and a consumer.[12]  In order to maintain an action under the KCPA, Wright must have been a consumer with respect to his dealings with Enhanced Recovery.[13]  The act defines a consumer as a party "who seeks or acquires property or services for personal, family, household, business or agricultural purposes."[14]  The KCPA's protection is limited to parties who actually contract with suppliers for goods or services.[15]

Wright's entire action arises from his allegation that he was wrongfully harassed about a debt he did not actually owe.  During his deposition, Wright stated that Enhanced Recovery never told him he was responsible for the debt or provided him with any goods or services.  Wright also stated that he never purchased any goods or services from Enhanced Recovery.  The allegedly deceptive and unconscionable conduct involves repeated phone calls to a wrong number.  At no point during these encounters was Wright ever a consumer.  He never sought to buy goods or services and was never solicited to do so.  Wright cannot bring an action under the KCPA while simultaneously maintaining that he never was offered or sought any goods or

---

[11] *Via Christi Reg'l Med. Ctr. v. Reed*, 298 Kan. 503, 519, 314 P.3d 852, 863-64 (2013).

[12] K.S.A. § 50-624, comment (c) ("This act covers sales, leases, assignments, and any other disposition for value of tangible personal property, real estate, services, and intangible property.  The only requirement is that the transaction involve a 'consumer.' ").

[13] *Krause v. Nationstar Mortg., LLC.*, 2015 WL 4041662, at *2 (D. Kan. July 1, 2015).

[14] K.S.A. §50-624(b).

[15] *CIT Grp./Sales Fin., Inc. v. E-Z Pay Used Cars, Inc.*, 29 Kan. App. 2d 676, 685, 32 P.2d 1197, 1204 (2001).

services.[16]   The Court therefore concludes that Wright was not a consumer as understood in the KCPA.

But Wright argues that since it was passed, the KCPA has been expanded to cover Enhanced Recovery's conduct.  He directs the Court to the Kansas No-Call Act, which is part of the KCPA.[17]   A violation of the No-Call Act is considered an unconscionable act under the KCPA.[18]  But the No-Call Act does not apply here.  The act provides, in relevant part, that "[n]o telephone solicitor may make or cause to be made any unsolicited consumer calls to any consumer if the consumer's telephone number or numbers appear on the no call list."[19]  The No-Call Act does not have its own definition of consumer, and is a part of the KCPA.[20]  Therefore, Wright still faces the problem of not being a consumer as understood in the act.

Additionally, the record shows that the phone calls Wright complains of are not "consumer calls" as understood in the No-Call Act.  A consumer call is defined as a call made

> for the purpose of soliciting a sale of any property or services to the person called, or for the purpose of soliciting an extension of credit for property or services to the person called, or for the purpose of obtaining information that will or may be used for the direct solicitation of a sale of property or services to the person called or an extension of credit for such purposes.[21]

---

[16] *Kastner v. Intrust Bank*, 569 F. App'x 593, 599 (10th Cir. 2014) (affirming the dismissal of a KCPA claim where plaintiff "did not allege in his complaint that he directly sought or acquired [the Defendant's] services in exchange for anything of value.").

[17] K.S.A. § 50-670(h).

[18] K.S.A. § 50-670a(g).

[19] K.S.A. § 50-670a(c).

[20] K.S.A. § 50-670(h).

[21] KSA § 50-670(a)(1).

The No-Call Act further notes that a call made "primarily in connection with an existing debt . . . which has not been completed at the time of such call" is excluded from the definition of an "unsolicited consumer telephone call."[22]

Given these definitions, Enhanced Recovery's phone calls were not consumer calls covered by the Kansas No-Call Act. Enhanced Recovery was not calling Wright to solicit a sale, extend credit, or obtain information for either of those purposes. Enhanced Recovery was calling to collect a debt. And although the calls were made to the wrong number, they were not made in violation of the No-Call Act because they were not unsolicited consumer calls.[23]

Because Enhanced Recovery was not dealing with Wright as a consumer in any way, he may not bring a claim under the KCPA. The KCPA protects consumers, not victims of phone calls made to the wrong number. Accordingly, Enhanced Recovery's motion for summary judgment is granted with regards to Wright's KCPA claim.[24]

**B. There is a genuine dispute as to whether Enhanced Recovery violated the FDCPA.**

In his Petition, Wright alleges violations of various sections of the FDCPA.[25] But Enhanced Recovery argues that based on the conduct he alleges, Wright can only pursue an FDCPA claim under 15 U.S.C. § 1692d(5), which prohibits a debt collector from harassing any person in connection with the collection of a debt by "[c]ausing a telephone to ring or engaging

---

[22] KSA § 50-670(a)(3)(B).

[23] In his opposition to Enhanced Recovery's motion, Wright asserts that "[t]he Kansas No-Call Act prohibits any calls to any telephone number appearing on the no-call list." Obviously, this cannot be the case. Individuals whose numbers on a no-call list still receive phone calls from acquaintances and strangers alike.

[24] Enhanced Recovery alternatively argued that it was entitled to summary judgment because Wright did not suffer actual damages under the KCPA and its conduct was neither deceptive nor unconscionable. Because Wright is not a consumer, the Court need not consider these arguments.

[25] Specifically, Wright alleges that Enhanced Recovery violated 15 U.S.C. §§ 1692c(c), 1692d, 1692d(5), 1692e, and 1692f.

-8-

any person in telephone conversation repeatedly or continuously with intent to annoy, abuse, or harass any person at the called number."  In his response, Wright seems to concede that his only path to recovery is through § 1692d and § 1692d(5).[26]  And given the conduct he alleges, Wright could not bring claims under both Paragraph (5) and the general preface of § 1692d.[27]  Therefore, the Court agrees with Enhanced Recovery that Wright's only claim under the FDCPA lies in § 1692d(5).

Section 1692d(5) prohibits the repeated or continuous calling of a person with intent to annoy, abuse, or harass.  In determining liability, the Court looks at the volume and pattern of calls sufficient to raise a triable issue of fact regarding the caller's intent.[28]  Here, the volume of calls alone (21) is insufficient to give rise to liability.[29]  And so Wright must show the calls were accompanied by other egregious conduct giving rise to intent to annoy, abuse, or harass.[30]  Such intent can be shown when the defendant continues to call the plaintiff after it has been asked to stop.[31]  Where there is some evidence that the defendant continued to call the plaintiff after being asked to stop, the question of whether the conduct constitutes an intent to harass, in violation of

---

[26] Wright does not address any other section of the FDCPA, and relies heavily on a case that illustrates why he could not possibly pursue an action under § 1692c.

[27] *See Cokely v. Midland Credit Mgmt., Inc.*, 2014 WL 5341919, at *4 n.2 (D. Kan. Oct. 21, 2014) ("Paragraph (5) [of § 1692d] is directly implicated by the facts of this case—i.e., the plaintiff relies solely on telephone calls for the harassing conduct—the plaintiff may not instead base her claim soley [sic] on the preface of Section 1692d, as such an interpretation would allow for the intent element of Paragraph (5) to be eviscerated and for Paragraph (5) to be rendered superfluous."); *Little v. Portfolio Recovery Assocs., LLC*, 2014 WL 140066, at * 1 n.1 (D. Kan. Apr. 10, 2014).

[28] *Lynch v. Nelson Watson & Assocs., LLC*, 2011 WL 2472588, at *2 (D. Kan. June 21, 2011).

[29] *Carman v. CBE Grp., Inc.*, 782 F. Supp. 2d 1223, 1232 (D. Kan. 2011) (granting summary judgment to defendants who called the plaintiff 149 times because a high volume of calls, unaccompanied by egregious conduct, fails to give rise to liability under § 1692d(5);

[30] *Id.*

[31] *See Meadows v. Franklin Collection Serv., Inc.*, 414 F. App'x 230, 234 (11th Cir. 2011); *Little*, 2014 WL 140066, at *2; *Carman*, 782 F. Supp. 2d at 1230.

§1692d(5), is one for a jury.[32]  Thus, to survive summary judgment, Wright must demonstrate a factual dispute as to whether Enhanced Recovery continued calling him despite his pleas that the calls stop.

In its motion, Enhanced Recovery avers that it first called Wright on July 30, 2014, and he selected the option indicating that he was not the sought party, and the sought party was unavailable.  He did not indicate that Enhanced Recovery had called a wrong number.  From that point on, Enhanced Recovery claims that Wright never spoke with a live representative, never selected the option indicating that the call had been made to the wrong number, and never indicated that he did not want to be called again.  In support of these claims, Enhanced Recovery cites its account records as well as Wright's deposition.  Wright controverts these assertions.  He cites his deposition in asserting that

> [e]ach time Plaintiff received a collection call from Defendant, Plaintiff explained that they had called a wrong number and that they remove Plaintiff's phone number from Defendant's records and be placed on their do-not-call list. [Citation Omitted].  Plaintiff spoke to a human being employee of Defendant approximately a dozen times and during these calls asked Defendant to change their records and remove Plaintiff's phone number from their dialing list. [Citation Omitted].

In brief, Enhanced Recovery claims that Wright never told its representatives to stop calling, and Wright disagrees.  Because evidence that Enhanced Recovery called Wright after being asked to stop could give rise to liability under § 1692d(5), it seems that there is an issue of material fact.[33]  But Enhanced Recovery argues Wright fails to create a *genuine* issue of material fact.

---

[32] *Meadows*, 414 F. App'x at 234-35.

[33] 10A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 2725.1, 430-31 (4th ed. 2016) (noting that a fact is material if its "existence or nonexistence might affect the result of the action.").

Enhanced Recovery notes that a nonmoving party must come forth with specific facts to survive summary judgment, and argues that Wright fails to meet that requirement with his deposition.[34]  Enhanced Recovery characterizes Wright's deposition as vague and conclusory, noting that it is full of approximations, generalizations, and inconsistencies.  And indeed, Wright testified that he merely presumed that most of the calls were from Enhanced Recovery when in fact, he was receiving calls from other agencies that were also attempting to reach Stephanie Yokom.  It was also revealed that Wright's handmade call-log was unreliable and he was mistaken about a specific occasion in which he believed he spoke to a representative of Enhanced Recovery.  In short, Enhanced Recovery asserts that its records are reliable, accurate, and specific while Wright's deposition is not.

True, Wright's deposition testimony appears less precise than the records and affidavits set forth by Enhanced Recovery.  And true, during the deposition Enhanced Recovery's counsel exposed some inconsistencies and mistakes in Wright's recollection.  But it is undisputed that Enhanced Recovery called Wright 21 times.   Wright testified that he spoke to a live representative from Enhanced Recovery several times, and each time he asked that he not be called anymore.  He further testified that Enhanced Recovery continued to call him after he made such pleas.  Enhanced Recovery highlights the lack of precision in Wright's testimony and the accuracy of its own records in seeking summary judgment.  But that is simply another way of asking the Court to make a credibility determination, which it will not do.[35]   Ultimately,

---

[34] *See Applied Genetics Int'l Inc. v. First Affiliated Sec., Inc.*, 912 F.2d 1238, 1241 (10th Cir. 1990) ("[T]he nonmoving party may not rest on its pleadings but must set forth specific facts showing that there is a genuine issue for trial as those dispositive matters for which it carries the burden of proof.").

[35] *Fogarty v. Gallegos*, 523 F.3d 1147, 1165 (10th Cir. 2008) ("On summary judgment, a district court may not weigh the credibility of the witnesses.").

Enhanced Recovery moves the Court to determine that its factual assertions are true while Wright's testimony is not. For example, at one point in its brief Enhanced Recovery asserts that

> Plaintiff identified an occasion on which he notified ERC of the wrong number . . . . Both ERC's records and Verizon's records, both of which Plaintiff admits are more accurate than his log or memory, reflect no such conversation occurred. ERC's records show that the phone call was not answered.

In the above passage, Enhanced Recovery is doing nothing more than asking the Court to accept its records and reject Wright's testimony. That is not the Court's role.[36] At the summary judgment stage, the Court's function is not to weigh evidence and determine the truth of the matter, but rather, the Court is tasked only with determining whether there is a triable issue of fact.[37] And here, the Court finds that a genuine issue of material fact exists as to whether Enhanced Recovery continued to call Wright after it was informed it had the wrong number and asked to stop. That question is one for the jury, not for the Court. Accordingly, Enhanced Recovery's motion for summary judgment is denied with regards to Wright's FDCPA claim.

## IV. Conclusion

Because the uncontroverted evidence demonstrates that Wright is not a consumer as understood in the KCPA, he cannot maintain an action under that act. Accordingly, the Court grants Enhanced Recovery's motion for summary judgment with regards to Wright's KCPA claim. As to the FDCPA claims, the Court finds that a genuine issue of material fact exists with regard to whether Enhanced Recovery continued calling Wright after being asked to stop.

---

[36] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) ("Credibility determinations, the weighing of evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, whether he is ruling on a motion for summary judgment or a directed verdict."); *see also* 10A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 2725.2, 440 (4th ed. 2016) ("[A] party moving for summary judgment is not entitled to a judgment merely because the facts the party offers appear more plausible than those tendered in opposition, or because it appears that the adversary is unlikely to prevail at trial.").

[37] *Birch v. Polaris Indus., Inc.*, 812 F.3d 1238, 1251 (10th Cir. 2015) (quoting *Anderson*, 477 U.S. at 248).

Therefore, Enhanced Recovery's motion for summary judgment as to Wright's FDCPA claims is denied.

**IT IS THEREFORE ORDERED** that Enhanced Recovery's Motion for Summary Judgment (Doc. 34) is hereby **GRANTED IN PART AND DENIED IN PART.**

**IT IS SO ORDERED**.

Dated this 16th day of December, 2016.


ERIC F. MELGREN
UNITED STATES DISTRICT JUDGE